GAUSS, RESPONDENT, *v.* TRUMP, ADMX., APPELLANT.

(No. 3,275.)

(Submitted September 19, 1913. Decided October 11, 1913.)

[135 Pac. 910.]

*Executors and Administrators—Claims Against Estate—Presentation—Pleadings—Conclusions—Quantum Meruit—Evidence —Weight for Jury—Review—Oral Contracts—Modification— Defective Judgment.*

Pleading—Implication—Construction.
  1.  As against an attack for lack of substance, whatever is necessarily implied in, or reasonably to be inferred from, an allegation of a pleading is to be taken as directly averred.
Executors and Administrators—Claims Against Estate—Presentation— Pleadings—Conclusions.
  2.  An averment in plaintiff's complaint against an administratrix to recover the reasonable value of services rendered her intestate, that on a certain day and "before the time for presentation of claims against the said estate had expired" he had presented his claim to the defendant, *etc., held* not open to the objection that, as to the fact that the claim had been presented within the time prescribed in the notice to creditors of the estate, it stated a mere conclusion of law; *held,* further, that in the absence of a special demurrer or motion, such an inferential allegation will support proof.

  [As to the statement of claims against estates of decedents, see note in 130 Am. St. Rep. 311.]

Same—Evidence—Weight of, for Jury—Review.

    3. As in other actions, so in one against the estate of a deceased person, the jury are the judges of the weight of the testimony and the credibility of the witnesses, and the supreme court, in passing upon the sufficiency of the evidence to support the verdict in such a case, will be guided by the same canons of review which obtain in other actions at law.

Same—Oral Contracts—Modification—Evidence—Sufficiency.

    4. Evidence in an action to recover from an estate on a *quantum meruit* for services performed for decedent under an alleged agreement, by the terms of which she agreed to devise her ranch to plaintiff in consideration of his managing the same during her lifetime, *held* sufficient to warrant the jury in finding in favor of plaintiff, inasmuch as, though it showed a departure by him from the agreement as originally made, it also disclosed a modification of the original agreement and performance on his part so far as performance was required of him under such modification.

Same—Defective Judgment.

    5. A judgment in an action against an administratrix to recover for services rendered to deceased, to the effect that plaintiff "have and recover" from the defendant, as administratrix, the amount of the verdict and costs, though defective under section 7536, Revised Codes, does not require a reversal of the judgment.

*Appeal from District Court, Ravalli County; R. Lee McCulloch, Judge.*

Action by John Gauss against Louise C. Trump, as administratrix with will annexed of Olive Ahrens, deceased. From a judgment for plaintiff, defendant appeals. Affirmed.

*Messrs. Tolan & Gaines,* and *Mr. Geo. T. Baggs,* for Appellant, submitted a brief. *Mr. R. F. Gaines* argued the cause orally.

By the provisions of section 7532, Revised Codes, the presentation of a claim against the estate is a condition precedent to the maintenance of the action; and by section 7525 a presentation of it within the time limited in the notice is a prerequisite to recovery. The sections of the statutes above and the decisions of this court with reference to necessary allegations in statutory proceedings clearly demand, in a complaint in an action of this character, a showing of the presentation of the claim and that within the time limited in the notice. (*Miley* v. *Northern Pac. R. Co.,* 41 Mont. 51, 108 Pac. 5; *Kelly* v. *Northern Pac. R. Co.,* 35 Mont. 243, 88 Pac. 1009.) This showing must be made by pleading facts—not conclusions. The pleading of conclusions as

distinguished from facts is of no avail either to raise an issue or to render support to a pleading the sufficiency whereof is challenged. (1 Sutherland's Code Pleadings & Practice, sec. 95; *Parks* v. *Barkley,* 1 Mont. 514; *McCauley* v. *Gilmer,* 2 Mont. 202; *Kipp* v. *Davis-Daly Copper Co.,* 41 Mont. 509, 21 Ann. Cas. 1372, 110 Pac. 237; *Pullen* v. *City of Butte,* 38 Mont. 194, 21 L. R. A. (n. s.) 42, 99 Pac. 290.)

In actions of this character, decisions holding as a general rule that when the sufficiency of the evidence to sustain a verdict is challenged, the verdict will not be disturbed in the supreme court, if there is any evidence to support it, are not in point, because of the generally one-sided nature of such transactions when claims are advanced against the estates of decedents. (*Holmes* v. *Connable,* 111 Iowa, 298, 82 N. W. 780; *Wallace* v. *Rappleye,* 103 Ill. 229; *Graham* v. *Graham's Exrs.,* 34 Pa. 475; *Brewer* v. *Hieronymus,* 19 Ky. Law Rep. 645, 41 S. W. 310; *Rosseau* v. *Rouss,* 180 N. Y. 116, 72 N. E. 916: 18 Cyc. 530, and cases cited.)

The form of judgment is defective. California has a provision similar to that found in section 7536, Revised Codes, and it has been construed by the supreme court of that state several times—among others in the case of *Vance* v. *Smith,* 124 Cal. 219, 56 Pac. 1031, and *Moore* v. *Russell,* 133 Cal. 297, 85 Am. St. Rep. 166, 65 Pac. 624, and judgments like the one at bar have been modified in the appellate court so as to comply with the statutory mandate.

*Messrs. O'Hara, Edwards & Madeen,* for Respondent, submitted a brief; *Mr. R. A. O'Hara* argued the cause orally.

Conceding that the allegation attacked is a mere legal conclusion, and that the publication of notice to creditors is not sufficiently pleaded, there remains an allegation that on September 19, 1911, the plaintiff made and presented his claim to the administratrix. This is a sufficient allegation of the presentation of the claim as against a general demurrer, or an objection to the introduction of any evidence, for the reason that

the complaint does not state facts suffi3ient to constitute a cause of action. "It is not the publication of notice which is a prerequisite to maintenance of action or claim, but the proper presentation of the claim and its rejection." (*Janin* v. *Browne,* 59 Cal. 37; *Ricketson* v. *Richardson,* 19 Cal. 330; *Wise* v. *Hogan,* 77 Cal. 184, 19 Pac. 278.) Furthermore, the objection that the claim was not presented, which is virtually the effect of the objection made, is made for the first time in this court, and this cannot be done. (*Bank of Stockton* v. *Howland,* 42 Cal. 129; *Coleman* v. *Woodworth,* 28 Cal. 567.) The most that can be said against the complaint is that it is uncertain, but these matters are cured by answer and proof. The answer admits the presentation of the claim and its rejection, as alleged. And counsel for defendant, admitted during the trial that the claim was filed with the administratrix within the legal time. Under these circumstances, the defect, if any existed, has been cured. (*Hershfield* v. *Aiken,* 3 Mont. 442; *Spencer* v. *Montana Cent. Ry. Co.,* 11 Mont. 164, 27 Pac. 681; *Raymond* v. *Wimsette,* 12 Mont. 551, 33 Am. St. Rep. 604, 31 Pac. 537.)

We contend that there is abundant evidence in the record that the plaintiff remained on the farm after the death of decedent's husband, under a promise or agreement that, in exchange for his services, he would be the beneficiary under her will; that he rendered faithful service to decedent and that she failed to carry out her promise, and the plaintiff is entitled to recover the reasonable value of his work. (*Grant* v. *Grant,* 63 Conn. 530, 38· Am. St. Rep. 379, 29 Atl. 15; *Estate of Kessler,* 87 Wis. 660, 41 Am. St. Rep. 74, 59 N. W. 129.) Page on Contracts, section 749, states the rule as follows: "If A renders services to B in consideration of an oral agreement by B to devise certain real estate to A, A can recover reasonable compensation from B's estate for the services thus rendered."

MR. JUSTICE SANNER delivered the opinion of the court.

The complaint of respondent alleges in substance that about May 15, 1906, he entered into an oral contract with Olive Ahrens,

now deceased, in and by which it was agreed that he should per-
form work and labor in the care and management of her ranch
during her lifetime in consideration that she should furnish him
food, clothing, and other necessaries of life and that she should
devise her said ranch property to him at her death; that he
thereupon entered upon the duties thus imposed upon him and
continued to discharge them until her death on December 14,
1910, and fully performed the contract on his part; that in
March, 1910, "the said agreement was by mutual consent so
modified that he, instead of receiving each year an unliquidated
sum as and for necessaries under said agreement, took a lease
of the premises which provided that he should receive one-half
of the proceeds thereof, which was executed in lieu of the pro-
vision in said agreement for necessaries"; that his services ren-
dered to her under the agreement were of the reasonable value
of $75 per month, or $3,450 in all, no part of which has been
paid; that Olive Ahrens died testate, but her will, which was
duly admitted to probate, contained no devise or bequest what-
ever to him; "that thereafter, and after publication of notice to
creditors of the estate of the said Olive Ahrens, deceased, had
been made and before the time in said notice specified for the
presentation of claims against the said estate had expired, and
on or about the 19th day of September, 1911, the plaintiff
* * * presented his claim for the reasonable value of the
services aforesaid * * * duly verified, * * * to the
defendant herein as administratrix, * * * which claim was
rejected; that thereafter, and on or about the 7th day of Oc-
tober, 1911, and before the time for presentation of claims
against the said estate had expired," the plaintiff presented an
amended statement of his claim, duly verified, which claim re-
ceived no action on the part of the administratrix, though more
than ten days have elapsed.

The answer admits that in the will of Olive Ahrens there is
not any devise or bequest to plaintiff; that plaintiff presented
his claim on September 19, 1911, which was rejected; that he
presented his amended claim on October 7, 1911, and that more

than ten days have elapsed since said presentation; alleges that if plaintiff ever did any work for Olive Ahrens he has been fully paid for the same, and that in the will of Olive Ahrens it is stated that the reason she makes no special bequest to him is because she feels that she has provided for him as much as the situation demands. Otherwise than as above set forth, the answer denies all the allegations of the complaint and also pleads a counterclaim upon a promissory note for $100, given by the respondent to Olive Ahrens on November 24, 1909. The reply admits the execution of the note but otherwise denies all the allegations of new matter contained in the answer.

The cause was tried to the court sitting with a jury, and the verdict was for the respondent, upon which judgment was entered to the effect that respondent "have and recover from said Louise C. Trump, as administratrix," the sum of $3,694.50, with costs amounting to $105.50. Appellant made and presented her motion for new trial, which was denied, and from the order denying a new trial, as well as from the judgment, she appeals.

But three questions are presented, *viz.:* Does the complaint state a cause of action? Does the evidence support the verdict? Is the judgment valid in form? Of these in their order.

1. The burden of the attack upon the complaint is that the [1,2] action is under a special statute authorizing suits to vindicate rejected claims against estates; that the plaintiff must in every such case bring himself within the statute by appropriate averments to the effect that his claim was presented in time; that the complaint does not show this, the allegations relative thereto and quoted above being mere conclusions instead of direct allegations from which the necessary conclusions might be drawn by the proper authority. The cases cited by counsel all hold that conclusions of law are ineffective for any purpose in pleading—a proposition indisputable and last enunciated by this court in *Ridpath* v. *Heller*, 46 Mont. 586, 129 Pac. 1054—but that a claim was presented within the time prescribed in a notice is a clear matter of fact implying proof of the time of presentation as well as of the notice and its terms, leaving the deter-

mination of the legal effect to the court.  It may be conceded
that the allegation in question is not in the best possible form,
but it is an obvious attempt to state the fact in its ultimate,
issuable aspect and at most is an inference rather than a con-
clusion of law.  Argumentative and inferential averments are,
it is true, as obnoxious to good pleading as are conclusions of
law, but their value is not the same.  Conclusions of law, unsup-
ported by the essential averments of fact, are always ineffective;
but, as against an attack for lack of substance, the allegations
of a pleading are to be liberally construed, with a view to sub-
stantial justice between the parties (Rev. Codes, sec. 6566), and
whatever is necessarily implied in, or is reasonably to be inferred
from, an allegation is to be taken as directly averred.  (*County
of Silver Bow* v. *Davies,* 40 Mont. 418, 107 Pac. 81.)   Where
the inferential allegations of a pleading are not attacked by
special demurrer or motion, as may be appropriate, we know
of no modern authority which denies the right of the pleader
to make proof under them; and that such an allegation as the
one before us will support proof was intimated in *Jones* v. *Rich,*
20 Mont. 289, 50 Pac. 936, and expressly decided in *Wise* v.
*Hogan,* 77 Cal. 184, 19 Pac. 278.   To all this we add the statu-
tory injunction that no judgment shall be reversed by reason of
any error or defect in the pleadings which does not affect the
substantial rights of the parties.   (Rev. Codes, sec. 6593.)

2. That the original agreement between the respondent and
Olive Ahrens was substantially as alleged in the complaint, and
that for over three years the respondent cared for and managed
her ranch under it, is abundantly proved.  The complaint, how-
ever, conceding that it was not fully performed according to the
original terms, pleads a modification, and the questions of fact
seriously debated are: Was there such a modification? and, if
there was, did the respondent perform the agreement so far as
performance was required of him?

We are urged by appellant's counsel to remember in approach-
[3]  ing this question that claims such as the one at bar are easy
to make and hard to disprove; that the only witness who could

specifically deny the alleged modification, establish nonperformance of the agreement, or show that full compensation had been made, is dead; that no defense is possible save as it may be found in the improbability of the stories of the plaintiff's witnesses when tested by comparison with other evidence in the case or by ordinary rules of human conduct under similar circumstances. In so far as this admonition implies that courts generally should scrutinize with more than usual care the quality of the proof presented in such cases, assent may be given; and, in so far as the proof consists of oral declarations of the deceased, caution was enjoined upon the trial court and jury by the statute. (Rev. Codes, sec. 8028; *Escallier* v. *Great Northern R. Co.*, 46 Mont. 238, 127 Pac. 458.) We can find, however, no authority in our Code for the application of any different rule as to the *quantum* of proof from the one prescribed for civil actions generally or for the assertion that this court may or should employ any different canons of review from those which obtain in other actions at law. The jury, who were the judges of the weight and credibility of the testimony, the trial judge, who, if he thought the verdict contrary to the weight of the evidence, could have set it aside, have expressed their satisfaction with the respondent's contention. It is to be presumed that they exercised all the caution and scrutiny enjoined upon them by the law, and it is not to be supposed that they were any the less solicitous for the integrity of decedents' estates than are we. The question before us is, therefore, the same as in other appeals in actions at law, *viz.*, whether there is any substantial evidence to support the verdict of the jury.

Turning, then, to the evidence, we ascertain that after respondent had cared for and managed the property under the original agreement for the period of forty-six months and until March, 1910, he then took the ranch for a year on shares. In October, 1910, after the harvest season, he left the place and took a position with one Joslyn, and the place was leased to one Markwell for the period to expire March 1, 1912. Doubtless these naked facts, if unexplained, would suffice to defeat the

respondent, for they would show that he had not performed his contract and would suggest that it had been terminated by mutual consent. But there are items of evidence which show the situation from and after March 1, 1910, when respondent took the ranch on shares, to have been otherwise than either an abandonment of the contract or a failure to perform by him. He testifies: "The agreement I had with Mrs. Ahrens was modified and I took the ranch on shares March 1, 1910, to March 1, 1911. * * * After I got married Mrs. Ahrens said, 'John, you better take the place and lease it; your wife will need money and won't feel like coming to me for it; and you lease the place and whatever you make off the crop when you need money you will be able to get it for yourself.' Mr. Joslyn came down there to buy some hogs; he first came down to buy some cows; we sold him the cows and then he came back the next day and he said, 'I would like to get hold of a man like you.' I told Mrs. Ahrens what Mr. Joslyn was going to give me, and she said, 'You go up there and try it a year.' I was there (at the Ahrens place) off and on up to the time of her death; when I came down town I would stop there."

Phil. Wagner testified: "I had some talks with Mrs. Ahrens regarding the situation after John moved off the place; one thing was he was getting good wages and another thing they didn't have any suitable place for him to live and they couldn't very well live there together; she intended to build across the road from there. * * * I think it was last fall, a year ago, that he left the Ahrens place. Markwell moved into the little house that Gauss occupied, and Mrs. Ahrens told me she had rented the place to him for the next year."

Mrs. Markwell testified: "We moved onto this land October 9, 1910; we were to have the place until the 1st of March, 1912; I told her (Mrs. Ahrens) we did not want to rent it for one year, and she said she did not think Mr. Gauss would be gone for more than a year. Mrs. Ahrens told me that Mr. Gauss was going to Dakota to look after some property belonging to his wife."

George Johnson testified: "The last time I saw Mrs. Ahrens was at my house about the middle of October, before she died; she said she had her will made and she was giving the bulk of her property to John Gauss. John was not living on the ranch at that time; she said he had gone over to Joslyn's temporarily."

C. B. Calkins testified that sometime in 1906 or 1907 Mrs. Ahrens had executed a will in his possession in which all her property was devised to John Gauss.

In their able brief for appellant, counsel say: "The reason he did not stay there and take care of the ranch until the death of Mrs. Ahrens was because the parties had made some new separate agreement which Mrs. Ahrens, now dead, cannot detail and which John Gauss chooses not to state." This may indeed be. [4] It could be wished that the evidence were more satisfactory, for there are circumstances which tend to give color to the theory of a mutual abandonment of the agreement. But these circumstances were all before the jury; the inferences to be drawn from the testimony were within their province; and, though there was room for a contrary conclusion, it is also a legitimate inference from the testimony that the change from the agreement as originally made to the lease on shares and from that to the temporary sojourn at Joslyn's were with Mrs. Ahrens' entire approval and without any understanding that the agreement was to be affected thereby. If this were the fact, nothing could prevent a recovery on *quantum meruit* against her had she lived and afterward repudiated the agreement. She alone had the right to say whether he had, up to that time, kept the agreement to her satisfaction or whether she should regard his conduct as a breach thereof (*Burns* v. *Smith,* 21 Mont. 251, 69 Am. St. Rep. 653, 53 Pac. 742); if she did not so regard it, if she acquiesced with apparent satisfaction in what he had done, but thereafter determined not to abide by the agreement, her subsequent death could not deprive him of the same remedy.

3. The form of the judgment is assailed, and rightly so. It [5] provides that the plaintiff "have and recover" from the

defendant, as administratrix, the amount of the verdict and costs, whereas, it should simply have .adjudged that the defendant, as administratrix, pay in due course of administration the amount ascertained to be due. (Rev. Codes, sec. 7536.) But this does not affect any substantial right and forms no ground of reversal.

It is ordered that, upon the return of the cause on *remittitur,* the district court correct the judgment to comply with section 7536, Revised Codes, the judgment to stand affirmed as corrected. The order denying a new trial is also affirmed.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

