FREEMAN, RESPONDENT, *v.* CHICAGO, M. & ST. P. RY. CO. ET AL., APPELLANTS.

(No. 3,586.)

(Submitted January 7, 1916. Decided January 24, 1916.)

[154 Pac. 912.]

*Personal Injuries—Railroads—Carrier and Passenger—Derailment—Presumptions—Negligence—Prima Facie Case—Showing Necessary—Mitigation of Damages—Limit of Rule.*

Carrier and Passenger—Derailment—Presumptions—Jury Question.
    1.  The derailment of a railway car in which plaintiff was riding as a passenger, raised a presumption of negligence; a showing to the contrary by defendant presented a question for the jury.

Same—Presumptions—Plaintiff may Rely on, When.
    2.  Where the record did not establish the cause of a derailment, plaintiff was not deprived of the presumption incident to the derailment.

Same—Evidence—Causal Connection—Sufficiency.
    3.  Evidence *held* to show a causal connection between the derailment of a railway car and plaintiff's injuries consisting of "wrist-drop" and minor hurts, caused by being thrown against the side of the car, and to establish liability for the resultant damages.

On the question of presumption of negligence for injury to passenger by derailment, see notes in 13 L. R. A. (n. s.) 606; 29 L. R. A. (n. s.) 811.

Same—Negligence—*Prima Facie* Case—Showing Necessary.

4. In a personal injury action, it is sufficient to make out a *prima facie* case if plaintiff can show that the injury is more naturally to be attributed to the negligence alleged than to any other cause, the rule of absolute exclusion of any other cause not being applicable in civil actions.

Same—Mitigation of Damages—Limit of Rule.

5. While an injured person must use ordinary diligence to effect a cure and thus to minimize the damages, he is not required, after one unsuccessful operation, to undergo another and major operation, risking failure in that as well, in order to bring about that result.

[As to derailment of train as raising presumption of negligence on part of company, see note in Ann. Cas. 1913E, 552.]

*Appeal from District Court, Meagher County; J. A. Matthews, Judge.*

ACTION by Joseph H. Freeman against the Chicago, Milwaukee & St. Paul Railway Company and another. Judgment for plaintiff, and defendants appeal from it and an order denying their motion for a new trial. Affirmed.

*Messrs. Shelton & Furman, Mr. A. J. Verheyen* and *Mr. L. D. Glenn,* for Appellants, submitted a brief; *Mr. Fred. J. Furman* argued the cause orally.

*Messrs. Purcell & Horsky* and *Messrs. Jones & Jones,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

The respondent, plaintiff below, brought this action to recover for personal injuries alleged to have been suffered by him while a passenger on one of the trains of the appellant railway company in consequence of the derailment thereof. The questions presented are whether negligence on the part of appellants was shown; whether such negligence was the proximate cause of the injuries complained of; whether the damages awarded are excessive; whether the verdict is contrary to law; and whether errors of law prejudicial to the appellants were committed at the trial.

1. It is not disputed that the respondent was a passenger [1] for hire, and that the car in which he rode was derailed.

This raises a presumption of negligence.   (*Hoskins* v. *Northern Pac. Ry. Co.,* 39 Mont. 394, 102 Pac. 988; *Pierce* v. *Great Falls & C. Ry. Co.,* 22 Mont. 445, 56 Pac. 867.)   If the evidence presented by appellants tended to show the contrary, its utmost effect was to raise a question for the jury.   (Rev. Codes, sec. 8028, subd. 2; 3 Thompson on Negligence, sec. 2773.)   Some contention is made that the presumption of negligence arising from the derailment is not available to respondent, because he presented evidence tending to show the cause of the derailment. [2]   The record does not show that the cause of the derailment was established.   Hence the respondent was not, either as a matter of pleading (*Hoskins* v. *Northern Pac. Ry. Co., supra*) or as a matter of proof (*Cassady* v. *Old Colony St. Ry.,* 184 Mass. 156, 63 L. R. A. 285, 68 N. E. 10), deprived of the benefit of the presumption.

2. The derailment occurred on June 30, 1913, at Harlowton. [3]   The injuries imputed to it by the complaint are that the respondent was bruised, shocked and wounded; that his right arm and right ankle were bruised and broken; that other injuries theretofore sustained by him and from which he was then recovering were greatly aggravated; that his injuries are permanent; and that, because of them, he has sustained great bodily and mental suffering, and is incapacitated for business. The evidence produced in his behalf tends to show these facts: He is a rancher, and at the time in question was fifty-two years old.   On the preceding 16th of May he met with an accident which resulted in the breaking of his right arm above the elbow, and a "Pott's fracture" of the right ankle.   For these he sought and received such medical treatment that at the time of the derailment he was in a fair way to complete recovery; his arm and ankle giving him no trouble.   In the derailment he was thrown bodily against the side of the car, striking against his right elbow, and thereafter his elbow was found to be sore and discolored, his arm hurt, his ankle sprained, his head bruised; he suffered loss of sleep and much pain from both ankle and arm, and two or three weeks later began to lose

control of his wrist and hand. This loss of control has since become total, showing an affection of the nerve which supplies the muscles of the forearm, wrist and hand, creating a form of paralysis known to the surgeons as "wrist-drop." The course of this nerve leads close to the elbow, and the condition of wrist-drop could have resulted, and it is reasonably probable that it did result, from the impact of the arm against the side of the car as stated above. A surgical examination of the respondent in October, 1913, disclosed that the nerve in question had become imbedded in a callous surrounding the point of the old fracture. No such condition was indicated in the middle of June, and was not probable as matters then stood. It could have been caused by excessive motion or too early use of the arm, but there is nothing to show that such was, or probably was, the cause. At the October examination the surgeon dissected the nerve from the callous, the purpose being to allow the nerve to regenerate if it would, but the wrist-drop remains and will remain unless something further is done. We think this shows a causal connection between the derailment and the wrist-drop, as well as the minor injuries complained of, and [4] to establish liability for the damages appropriate thereto. True, the evidence does not absolutely exclude the possibility of any other cause of the wrist-drop; but courts cannot attain to scientific demonstration, and the rule of absolute exclusion prevailing in criminal cases does not apply to civil actions. "It is sufficient to make out a *prima facie* case if the plaintiff can show that the injury is more naturally to be attributed to the negligence alleged than to any other cause." (*Andree* v. *Anaconda C. Min. Co.,* 47 Mont. 554, 133 Pac. 1090.)

3. We quite agree with counsel for appellants that, if we ignore the wrist-drop, the damages awarded would be grossly excessive. But the wrist-drop cannot be ignored, for it means the loss of the right hand; unless the respondent can be relieved, he is worse off than if he had suffered amputation. [5] It is argued that this may not be considered, because Dr.

Keistler believes that an operation will relieve him. So Dr. Keistler believed in October, when an operation was performed for that purpose without result; and he also says: "An operation at this time might produce complete recovery, and it might not." In any case the operation is not a simple one, but a "major operation, one that involves delicate structures and the import of which is more serious." We recognize the rule that an injured person must use ordinary diligence to effect a cure and thus to minimize the damages (*Tiggerman* v. *City of Butte,* 44 Mont. 138, 119 Pac. 477; *Allen* v. *Bear Creek Coal Co.,* 43 Mont. 269, 115 Pac. 673) ; but it would be carrying this rule to an absurd extreme to hold that a man who has submitted to one operation, which failed, must take such chances with his life and his health as may be involved in a second, risking failure in that as well, in order that the damages caused by another's negligence may possibly be reduced. (Watson on Damages, sec. 186; *Martin* v. *Pittsburgh Ry. Co.,* 238 Pa. 528, 48 L. R. A. (n. s.) 115, 86 Atl. 299; *Blate* v. *Third Ave. Ry. Co.,* 44 App. Div. 163, 60 N. Y. Supp. 732; *McNamara* v. *Metropolitan St. Ry. Co.,* 133 Mo. App. 645, 114 S. W. 50.) So, considering the wrist-drop as well as the minor injuries sustained by the respondent, taking some cognizance of the pain and anguish necessarily entailed thereby, and noting the respondent's expectancy of life and his loss of earning capacity, in connection with the cost of an annuity to recoup the same, we cannot pronounce the award so excessive as to shock the conscience; we do not even think it should be scaled. (*Lewis* v. *Northern Pac. Ry. Co.,* 36 Mont. 207, 92 Pac. 469; *White* v. *Chicago etc. Ry. Co.,* 49 Mont. 419, 143 Pac. 561; *Mullery* v. *Great Northern Ry. Co.,* 50 Mont. 408, 148 Pac. 323.)

4. It is suggested that the verdict is contrary to the court's instructions numbered 6, 7, 12 and 13, and therefore is against law. We find no argument specifically directed to this proposition, but careful consideration of it fails to disclose wherein such contrariety exists.

5. The other assignments of error are procedural, and none of them, in our opinion, command a reversal of this case.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.