STOKES, RESPONDENT, *v.* LONG, APPELLANT.

(No. 3,662.)

(Submitted May 12, 1916.   Decided July 3, 1916.)|

[159 Pac. 28.]

*Physicians and Surgeons—Malpractice—Complaint—Sufficiency — Liability for Improper Treatment — Evidence — X-ray Plates — Minimizing Damages — Duty of Plaintiff — Appeal and Error—Record—Harmless Error.*

Appeal and Error—Record—Judgment-roll.
   1.   If the record on appeal from an order denying a new trial, made upon the minutes of the court, contains certified copies of all the papers which go to make up the judgment-roll, it need not embody a copy of the latter authenticated as such.

Physicians and Surgeons—Malpractice—Complaint—Sufficiency.
   2.   A complaint stating that defendant physician, employed to treat plaintiff's broken leg, "failed to exercise ordinary care and skill," and so carelessly and negligently treated the fracture as to displace the bones, causing shortening of the leg and pain, suffering and damages, and alleging in traversable form the acts or omissions of defendant on which recovery is sought, showing they occurred through defendant's negligence, is sufficient.
      [As to liability of surgeon for negligence and malpractice, see notes in 48 Am. Dec. 481; 93 Am. St. Rep. 657.]

Same—Trial—Nonsuit—Review of Evidence.
   3.   Where defendant introduces evidence after his motion for nonsuit is denied, the court, on appeal, will consider only the question whether the evidence as a whole made a case for the jury.

Same—*Prima Facie* Case—Evidence—Sufficiency.
   4.   Evidence in an action against a physician for malpractice in the treatment of a broken leg, *held* to have made a *prima facie* case for

the jury as to whether defendant exercised ordinary care and skill in selecting the means employed to produce a proper union.

Same—Liability for Negligence of Recommended Physician.

5. If one physician, upon leaving his home temporarily, recommends to his patients, in case of need, some other physician who is not in any sense in his employment nor associated with him as a copartner, he is not liable for injuries resulting from negligence or want of skill in the latter, the employment in such case being under an independent contract and he alone responsible for the result.

Same—Liability for Negligence of Associated Physician.

6. Where two physicians are employed on the same case and by agreement divide the service between them, and one observes and lets go on without objection wrongful acts and omissions by the other, or if the circumstances are such that he ought to have observed such wrongful acts or omissions, he is liable.

Same.

7. A physician who called in another to assist him in treating a broken leg, giving the latter exclusive charge only upon leaving the city for an extended stay, and requesting the patient to retain his half of the fee, was liable in damages where the treatment was vicious from the beginning.

Same—Minimizing Damages—Duty of Plaintiff.

8. Though one who has suffered a personal injury through the fault of another must use ordinary care and diligence to minimize the injurious consequences, he need not necessarily submit to a major operation, which may or may not result in a betterment of his condition; whether he has used such care is a question for the jury's decision.

Same—Minimizing Damages—Cost of Operation—Evidence—Admissibility.

9. Evidence of the cost of an operation that would minimize plaintiff's suffering due to a vicious union of a broken leg, at the time of the trial, was admissible in an action against the physician for damages.

(MR. CHIEF JUSTICE BRANTLY dissenting.)

Same—Pain and Suffering—Limit of Recovery.

10. In a personal injury action, plaintiff cannot recover compensation for future pain and suffering, and also the amount it would cost to obtain relief from it.

Same—Evidence—Course of Treatment by Associated Physician.

11. Evidence showing the course of treatment pursued by an associated physician for several weeks after defendant had left town, was competent to inform the jury that the course of treatment approved by defendant was continued without change, in order to rebut the notion that any efficient cause intervened by reason of anything such associated physician did upon his own initiative to bring about the condition in which plaintiff found himself at the conclusion of the treatment.

Same—Evidence—Harmless Error.

12. Admission of the evidence referred to in paragraph 11, *supra,* if error, was harmless where the jury were instructed to find for plaintiff only if his injury was suffered from defendant's acts or omissions before he left town.

Harmless Error—Erroneous Instruction Favorable to Appellant.

13. Appellant cannot complain of an instruction, even though incorrect, which was as favorable to him as he could ask.

Physicians and Surgeons—X-ray Plates—Evidence—Admissibility.

14. X-ray plates—like photographs—if testified to as correct, are competent evidence to prove a condition which can be shown by such a representation; hence such plates showing the condition of plaintiff's

leg at time of trial, were competent, they having been taken by practicing physicians who showed that they understood and were accustomed to the use of X-ray process in their practice, and possessed the required skill and knowledge to use it with accurate results.

Appeal—Error in Instructions—Duty of Appellant.

15. On motion for new trial, neither the district nor the supreme court on appeal can consider any error in instructions not specifically pointed out at the time of settlement thereof.

*Appeal from District Court, Fergus County; Roy E. Ayers, Judge.*

ACTION by Frank H. Stokes against W. A. Long. From a judgment for plaintiff and an order denying him a new trial, defendant appeals. Affirmed.

*Messrs. Norris & Hurd,* for Appellant, submitted a brief; *Mr. Edwin L. Norris* argued the cause orally.

To allege that appellant failed to exercise ordinary care and skill in the performance of his duty; failed to use reasonable care and diligence in the exercise of his skill as a physician and treated the fracture of respondent's leg in a grossly careless, negligent and improper manner, are allegations of bald conclusions of law. (*Pullen* v. *City of Butte,* 38 Mont. 194, 21 L. R. A. (n. s.) 42, 99 Pac. 290; *McPherson* v. *Pacific Bridge Co.,* 20 Or. 486, 26 Pac. 560; *Woodward* v. *Oregon Ry. & Nav. Co.,* 18 Or. 289, 22 Pac. 1076; *Chicago, B. & Q. Ry. Co.* v. *Harwood,* 90 Ill. 425; *Jeffersonville etc. Ry. Co.* v. *Dunlap,* 29 Ind. 426; *Pittsburgh etc. Ry. Co.* v. *Peck,* 165 Ind. 537, 76 N. E. 163.) In *Merriam* v. *Hamilton,* 64 Or. 476, 130 Pac. 406, the court held that a complaint attempting to charge negligence of a physician in substantially the same language as that set forth in the complaint in the case at bar did not state a cause of action.

The employment of Dr. Wallin by the respondent constituted an independent contract. (*Keller* v. *Lewis,* 65 Ark. 578, 47 S. W. 755; *Myers* v. *Holborn,* 58 N. J. L. 193, 55 Am. St. Rep. 606, 30 L. R. A. 345, 33 Atl. 389; *Hitchcock* v. *Burgett,* 38 Mich. 501; *Morey* v. *Thybo,* 199 Fed. 760, 118 C. C. A. 198.)

And this is true even though the employment of Wallin was made upon the recommendation of the appellant.

Where two physicians, having no business connections are employed on the same case, they are considered as independent agents, and each is responsible for his own negligence and no more. (*Myers* v. *Holborn,* 58 N. J. L. 193, 55 Am. St. Rep. 606, 30 L. R. A. 345, 33 Atl. 389; *Keller* v. *Lewis,* 65 Ark. 578, 47 S. W. 755; *Robinson* v. *Crotwell,* 175 Ala. 194, 57 South. 23; *Brown* v. *Bennett,* 157 Mich. 654, 122 N. W. 305; *Morey* v. *Thybo,* 199 Fed. 760, 118 C. C. A. 198.) So it is held that where one physician is called in by the patient or the attending physician to take the latter's place, either temporarily or permanently, the physician called in is alone responsible for any injury to the patient caused by his lack of care or skill. (*Tomer* v. *Aiken,* 126 Iowa, 114, 101 N. W. 769; *MacKenzie* v. *Carman,* 103 App. Div. 246, 92 N. Y. Supp. 1063; *Hawthorne* v. *Richmond,* 48 Vt. 557; *Myers* v. *Holborn,* 58 N. J. L. 193, 55 Am. St. Rep. 606, 30 L. R. A. 345, 33 Atl. 389; *Hitchcock* v. *Burgett,* 38 Mich. 501; *Laugher* v. *Pointer,* 5 Barn. & C. 547, 108 Eng. Reprint, 204; *De Forrest* v. *Wright,* 2 Mich. 368; Wood on Master and Servant, sec. 311.)

To create any liability on the part of the appellant for the lack of skill and care of the other physician, which resulted in injury to the respondent, it must appear that Dr. Wallin was under the appellant's dominion and control, or, in other words, that the relation of principal and agent existed. (*Baker* v. *Wentworth,* 155 Mass. 338, 29 N. E. 589; *Harris* v. *Fall,* 177 Fed. 79, 27 L. R. A. (n. s.) 1174, 100 C. C. A. 497; *Wilkins* v. *Ferrell,* 10 Tex. Civ. App. 231, 30 S. W. 450; *Reynolds* v. *Smith,* 148 Iowa, 264, 127 N. W. 192; *Broz* v. *Omaha etc. Hospital Assn.,* 96 Neb. 648, L. R. A. 1915D, 334, 148 N. W. 575; *Hunner* v. *Stevenson,* 122 Md. 40, 89 Atl. 418; *Stewart* v. *Manasses,* 244 Pa. St. 221, 90 Atl. 574; *Tish* v. *Welker,* 7 Ohio N. P. 472; *Lawson* v. *Crane,* 83 Vt. 115, 74 Atl. 641; *Link* v. *Sheldon,* 136 N. Y. 1, 32 N. E. 696; *Landon* v. *Humphrey,* 9 Conn. 209, 23 Am. Dec. 333). Even though appellant on his own respon-

sibility had employed Dr. Wallin, appellant would not have been responsible for any acts of negligence of Dr. Wallin. (*Hitchcock* v. *Burgett, supra; Myers* v. *Holborn, supra; Laugher* v. *Pointer,* 5 Barn. & C. 547, 108 Eng. Reprint, 204; *Robinson* v. *Crotwell,* 175 Ala. 194, 57 South. 23.)

No evidence was offered by respondent to the effect that as the result of appellant's acts, the damages to respondent occurred, but the theory of respondent's case was that his damages were the result of the negligent acts of both appellant and Dr. Wallin. Under this evidence it is clear that any negligence on the part of Dr. Wallin, if any there was, constituted an intervening cause, and hence such evidence as was offered as to Dr. Wallin's treatment of the case was not competent or relevant to the issues in this case. Any intervening cause would break the causal connection between the negligence of appellant and the injuries of respondent, and would relieve appellant of liability. And it would be immaterial whether such intervening cause were the direct and positive acts of Dr. Wallin or otherwise. (29 Cyc. 488; 1 Thompson on Negligence, sec. 55; *Ewing* v. *Good,* 78 Fed. 442; *Gores* v. *Graff,* 77 Wis. 174, 46 N. W. 48; *Link* v. *Sheldon,* 18 N. Y. Supp. 815.)

The X-ray plates were objected to for the reason that no legal foundation therefor had been laid and that they were not material to any issue in the case. They were not shown to be correct representations of what they purported to represent, and should have been excluded. (Wigmore on Evidence, secs. 790–797; *Ligon* v. *Allen,* 157 Ky. 101, 51 L. R. A. (n. s.) 842, 162 S. W. 536; *Louisville & N. Ry. Co.* v. *Brown,* 127 Ky. 732, 13 L. R. A. (n. s.) 1135, 106 S. W. 795; *Higgs* v. *Minneapolis etc. Co.,* 16 N. D. 446, 15 Ann. Cas. 97, 15 L. R. A. (n. s.) 1089, 114 N. W. 722; *Dederich* v. *Salt Lake etc. Ry. Co.,* 14 Utah, 137, 35 L. R. A. 802, 46 Pac. 656; *Mauch* v. *Hartford,* 112 Wis. 40, 87 N. W. 816.)

The error made in instruction No. 3 consists in the failure to define the negligent, careless and unskillful treatment referred to, and in informing the jury that the law implied a promise

and duty on the part of appellant to use reasonable skill, *etc.*, whereas the correct rule is that the law implies no other promise or duty on the part of a physician than to use such ordinary skill and reasonable diligence in and about a treatment of a patient as is ordinarily used by the average of the medical profession in the same and similar communities. (22 Am. & Eng. Ency. of Law, 799, 801; 30 Cyc. 1570, 1572; *McDonald* v. *Harris*, 131 Ala. 359, 31 South. 548; *Pike* v. *Honsinger*, 155 N. Y. 201, 63 Am. St. Rep. 665, 49 N. E. 760; *State* v. *Housekeeper*, 70 Md. 162, 14 Am. St. Rep. 340, 2 L. R. A. 587, 16 Atl. 382; *Smith* v. *Overby*, 30 Ga. 241; *Hewitt* v. *Eisenbart*, 36 Neb. 794, 55 N. W. 252; *McNevins* v. *Lowe*, 40 Ill. 209.)

*Mr. O. W. McConnell* and *Mr. John A. Coleman*, for Respondent, submitted an original and supplemental brief; *Mr. McConnell* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

In this action plaintiff recovered a judgment against defendant, a physician and surgeon, for alleged malpractice in the reduction and treatment of a broken leg. The defendant has appealed from the judgment and an order denying his motion for a new trial. The appeals were taken separately, and appear upon the records of this court under different numbers, but they were argued and submitted, and will be determined as if taken at the same time.

The motion for a new trial was made upon the minutes of the court. After the defendant had filed his brief in this court, counsel for plaintiff filed a motion, asking this court to strike from the files the record on appeal from the order denying the motion for a new trial, and to dismiss the appeal, alleging that the district court was without jurisdiction to settle the statement on appeal because it, together with amendments proposed by counsel for the plaintiff, had not been presented to the trial court within the time and in the manner prescribed by the pro-

vision of the statute. The motion included also a demand for a dismissal of the appeal on the ground that the record does not contain a copy of the judgment-roll. The motion was denied, with leave to counsel to renew it at the hearing, which they did. The record discloses that during the proceedings leading up to the settlement of the statement, irregularities intervened. We shall not take the time to discuss them in detail. It is sufficient to say that counsel for the plaintiff, by pursuing the course they did, waived these irregularities, and cannot now insist that the [1] court was in error in disregarding them. The record on the appeal from the order denying the new trial does not contain a copy of the judgment-roll authenticated as such. It does -contain, however, certified copies of all the papers which go to make it up. This sufficiently meets all requirements. (Rev. Codes, sec. 6799; *Doornbos* v. *Thomas*, 50 Mont. 370, 147 Pac. 277.) The motion to dismiss is therefore denied.

On the merits it is argued with much earnestness that the [2] complaint does not state a cause of action, and hence does not support the judgment. It alleges that defendant was a physician and surgeon; that on November 25, 1913, plaintiff had the thigh bone of his left leg broken, and that he employed the defendant, in his professional capacity as such physician and surgeon, to reduce the fractured bone to its proper position and place and to attend to and cure the same. It is then alleged: "That the defendant accepted and entered upon such employment on the said twenty-fifth day of November, 1913, but wholly failed to exercise ordinary care and skill in the performance of his duty, and wholly failed to use reasonable care and diligence in the exercise of his skill as such physician and surgeon, and did then and there treat the fracture of said leg in a grossly careless, negligent, unskillful and improper manner, so that the bones of said leg were displaced and out of their natural state, position and condition, thereby causing the plaintiff's leg to be shortened several inches, causing great bodily and mental pain and suffering, which said pain and suffering still continues, whereby the plaintiff has been, and is now, greatly and perma-

nently injured, to his damage in the sum of $25,000." The paragraphs following contain allegations charging that because of said negligent conduct of defendant, plaintiff's earning capacity has been entirely destroyed for a long time to come, to his damage in the sum of $5,000, and that he has suffered damage further in the sum of $1,500, which he will be compelled to pay for an operation and treatment by competent physicians and surgeons, in order to have the condition of his leg ameliorated and to gain relief from the pain now suffered by him.

It is said that the allegations found in the paragraph quoted are mere bald conclusions of law, and hence that the pleading does not meet the requirements of section 6532 of the Revised Codes, in that it does not contain "a statement of the facts constituting the cause of action in ordinary and concise language." In other words, it does not aver the specific act or omission of defendant upon which plaintiff bases his right to recover. The pleading is not a model, but we think it states facts sufficient to save it from condemnation. The paragraph made the subject of defendant's attack does not state very fully or specifically the facts constituting the omission of duty by defendant. It does state, however, that defendant so treated plaintiff's injury "that the bones of said leg were displaced, * * * thereby causing plaintiff's leg to be shortened several inches." This, with the qualifying terms employed, we think sufficiently informed defendant upon what plaintiff would rely for a recovery. It means, if anything, that defendant's treatment was such that the fragments of the bone of plaintiff's leg were not retained in apposition, with the result that the leg became shortened, whereas the acceptance of the employment imposed upon defendant the duty to exercise reasonable care and skill to prevent such a result, which the defendant failed to do. It does not matter that the qualifying terms imputing negligence precede or follow the omission of duty charged, or that they are employed at all, if the direct averments of the complaint necessarily raise the presumption of negligence. It is sufficient to meet all requirements if the pleader sets out in traversable form

the acts or omissions of the defendant upon which he seeks re-
covery, and shows that they occurred through the negligence of
the defendant. This, we think, the complaint here does. (6
Thompson on Negligence, sec. 7447; *Georgia Pac. R. Co.* v.
*Davis,* 92 Ala. 300, 25 Am. St. Rep. 47, 9 South. 252; *Taylor* v.
*Felsing,* 164 Ill. 331, 45 N. E. 161; *City of Geneva* v. *Burnett,*
65 Neb. 464, 101 Am. St. Rep. 628, 58 L. R. A. 287, 91 N. W.
275; *Consumers' Elec. L. etc. Co.* v. *Pryor,* 44 Fla. 354, 32
South. 797; *Hanselman* v. *Carstens,* 60 Mich. 187, 27 N. W. 18.)
This statement is in full harmony with the rule announced by
this court in *County of Silver Bow* v. *Davies,* 40 Mont. 418, 107
Pac. 81; *Gauss* v. *Trump,* 48 Mont. 92, 135 Pac. 910; *Willoburn
Ranch Co.* v. *Yegen,* 49 Mont. 101, 140 Pac. 231, and other
cases—that, as against an attack for lack of substance, whatever
is necessarily implied or reasonably to be inferred from an alle-
gation in a pleading is to be taken as directly averred.

It is contended that there was no substantial evidence intro-
duced by the plaintiff showing negligence by defendant or con-
necting him with the injury suffered by plaintiff, and hence the
[3]  court should have sustained defendant's motion for non-
suit and for a directed verdict. Inasmuch as the defendant
introduced evidence after the motion for nonsuit was denied,
we shall consider only the question whether the evidence as a
whole made a case which should have been submitted to the
jury. (*Van Vranken* v. *Granite County,* 35 Mont. 427, 90 Pac.
164.; *Yergy* v. *Helena L. & Ry. Co.,* 39 Mont. 213, 18 Ann. Cas.
1201, 102 Pac. 310.) The evidence is quite voluminous and
cannot be recapitulated *in extenso.* Nor do we deem it neces-
sary to discuss in detail the portions of it in which the various
expert witnesses expressed their personal views as to the merits
or demerits of the particular mode of treatment or mechanical
appliances which ought to be pursued in such cases. After a
careful study of it, we have concluded that it presents a case
calling for the judgment of the jury.

In the forenoon of November 25, 1913, the plaintiff was pre-
[4]  paring to move a steam threshing machine. While back-

ing the engine in order to couple it with the separator, he inad-
vertently permitted the former to back too far. In the resulting
collision he was caught by the engine and suffered a transverse
fracture of the upper third of the femur of his left leg. The
skin and muscles of the leg on the inner side were also consid-
erably lacerated. The plaintiff was put into a wagon and taken
for treatment to Lewistown, about ten miles away, where de-
fendant resided. Plaintiff's wife, at his direction, went forward
to engage defendant's services. He had theretofore been em-
ployed by plaintiff. In case she could not find defendant, she
was to employ Dr. Wallin. Finding the defendant in his office,
she told him of the accident, and that plaintiff desired his ser-
vices. He agreed to serve plaintiff. He instructed her to en-
gage a room and nurse at a hospital. He also told her that he
would need assistance, and suggested that he secure the services
of Dr. Wallin. To this she agreed. When plaintiff arrived
at the hospital, at about 4 o'clock in the afternoon, defendant
and Dr. Wallin were both present. The two proceeded at once
to reduce the fracture and to apply such devices as they deemed
necessary and proper to secure immobility of the leg and to
maintain the parts of the bone in apposition, first cleansing and
stitching up the superficial wound. The defendant administered
the anesthetic. Dr. Wallin performed the operation and applied
the mechanical devices which he deemed necessary. No one
other than the two physicians witnessed the operation. When
it had been completed, plaintiff was removed from the operating-
room and put in bed, where he remained for five weeks. At the
time of the trial it was not controverted—at least there was evi-
dence tending to show—that the parts of the bone had not been
kept in apposition, but had been permitted to slip by each other,
the result being a vicious union with a shortening of the leg to
the extent of two inches, rendering the use of it painful.

There is much conflict in the evidence as to the course of
treatment pursued from the time the fracture was reduced until
plaintiff was permitted to leave the hospital, which he did at
the end of the sixth week. The plaintiff, his wife, and other

lay witnesses testified at length as to the appliances used and the attention given plaintiff. This testimony described the course of treatment as follows: When plaintiff returned to consciousness, his leg was inclosed in a plaster of paris cast without any opening. He was then in bed in a horizontal position, with a weight of four and three-quarter pounds attached to his foot by means of a cord held by strips of surgeon plaster adhering to the leg.. The cord passed over a pulley at the foot of the bed, and held the weight suspended. He was kept in this position until he left the hospital. No means were employed such as the elevation of the foot of the bed to prevent his body slipping down in the bed, as it yielded to the pull of the weight. No examinations were made by means of the X-ray process, nor were the usual necessary superficial measurements made from day to day. No examination could be made by manipulation because the cast prevented. Several physicians, who either heard this testimony or had it submitted to them in the form of hypothetical questions, expressed the opinion that the treatment was vicious, in that it was not such as reasonable knowledge of the surgical art and ordinary care and skill in its practice require. The vice of it, in their opinion, lay in these omissions: To use a much heavier weight—from twelve to twenty pounds or more—to keep the muscles of the leg in a state of relaxation; to elevate the foot of the bed in order to have plaintiff's body serve as a counterweight, and thus keep the muscles relaxed in order to maintain apposition; to measure the limb from day to day, to be assured that apposition was being maintained; and, in view of the fact that the limb was inclosed in a cast, to use the X-ray process for the same purpose. Some of these witnesses expressed the opinion that, considering the inadequacy of the appliances used, and assuming that apposition was secured when reduction had been effected, that condition could not have continued for more than a few hours afterward. In our view, this evidence made a *prima facie* case for the jury as to whether ordinary care and skill had been exercised in selecting the means employed to produce a proper union.

The defendant and Dr. Wallin both detailed the course of treatment which they claim to have pursued. If their testimony were to be accepted as true, plaintiff had no case; for, as detailed by them, the course pursued was in every particular beyond criticism even in the opinion of plaintiff's expert witnesses. Even so, the evidence as a whole presented a question as to whether, in view of the result, their testimony was true, and this question was exclusively for the jury. But counsel contend that the evidence shows without contradiction that Dr. Wallin reduced the fracture and chose the mechanical appliances which were used, the defendant administering the anesthetic only; that the defendant left Lewistown for Florida on November 30 and spent the winter there; that during the days intervening between November 25 and the latter date, the defendant took no part in the treatment of the injury, and hence that Dr. Wallin was solely responsible, so that, if plaintiff suffered wrong at the hands of anyone, it was by reason of the negligence of Dr. Wallin. In other words, since defendant was authorized by plaintiff to employ Dr. Wallin and he performed the operation of reduction and thereafter treated the plaintiff exclusively, Dr. Wallin's employment constituted an independent contract, under which he became solely responsible to plaintiff. If the evidence were in the condition which counsel assert, their conclusion would undoubtedly be correct. If [5] one physician, upon leaving temporarily the community in which he is engaged in practice, recommends to his patients the employment, in case of need, of some other physician who is not in any sense in his employment nor associated with him as a copartner, he is not liable for injuries resulting from negligence or want of skill in the latter, in case he is employed. In such case the employment of the latter is under an independent contract, and he is solely responsible for the result. (*Keller* v. *Lewis,* 65 Ark. 578, 47 S. W. 755; *Myers* v. *Holborn,* 58 N. J. L. 193, 55 Am. St. Rep. 606, 30 L. R. A. 345, 33 Atl. 389; *Hitchcock* v. *Burgett,* 38 Mich. 501; 5 Thompson on Negligence, sec. 6723; 22 Am. & Eng. Ency. of Law, 2d ed., 805;

30 Cyc. 1581; 3 Wharton & Stille's Medical Jurisprudence, sec. 502.) In the section cited from Thompson on Negligence, *supra,* the rule is stated thus: "A physician or surgeon is not liable for the negligence of another practitioner whom he recommends or sends in his place when he is unable to attend the patient, and whose services are continued under an independent contract, since no relation of agency or employment exists between the physicians." It is held also that where two physicians [6] are employed on the same case and by agreement divide the service as their best judgment may dictate, they are considered as independent agents, each being responsible for his own negligence and no more. (*Morey* v. *Thybo,* 199 Fed. 760, 42 L. R. A. (n. s.) 785, 118 C. C. A. 198.) If, however, one observes and lets go on without objection wrongful acts and omissions by the other, or if the circumstances are such that he ought to have observed such wrongful acts or omissions, he is liable. Each is bound to bring to the case the ordinary knowledge and skill of the profession, and also to give his best personal attention and care. If one is guilty of want of ordinary professional care and skill in choosing the mode of treatment adopted, and the other expressly or impliedly gives his approval, there is no reason apparent why the latter should not be held guilty also, for by his acquiescence he fails to give the care and attention which his employment requires. (*Morey* v. *Thybo, supra.*)

The evidence does not justify the position of counsel. Dr. [7] Wallin was employed, in the first place, to assist the defendant. Though the defendant insisted in his testimony that he told plaintiff's wife that he could not take charge of the case because he was about to leave for Florida, and suggested calling Dr. Wallin, the evidence justifies the conclusion that he considered the case as his own, and had Dr. Wallin called merely to assist him in reducing the fracture, with the purpose of having him take exclusive charge of the case only after he had left. This is indicated by the fact that he continued to visit the plaintiff daily from November 25 to November 30,

inclusive, making such examinations of the injury and such inquiries touching the plaintiff's general condition as were made, generally accompanied by Dr. Wallin who, however, did nothing other than to lend his presence; and also the fact that some weeks after he had gone he wrote the plaintiff, requesting him to retain his half of the fee. There was testimony to the effect that the treatment was vicious from the start, in that Dr. Wallin had not made use of what is known among physicians and surgeons as "Buck's Extension," or other adequate appliance to preserve apposition of the parts of the bone, and continued so until the plaintiff left the hospital. If this was so— and whether it was, was a question for the jury—the defendant cannot be held blameless for the omissions and wrongful acts of Dr. Wallin in failing to use adequate appliances so long as he was in attendance. Indeed, by his acceptance of the situation as it was at the completion of the operation and permitting it to continue for the five days during which he was in attendance, he approved Dr. Wallin's method and adopted it as his own; and, as the evidence tends to show this, and that no change in treatment was thereafter made, the conclusion seems inevitable that both are to be deemed responsible for the result, the evidence suggesting no other effective cause to which it might be attributed, but, on the contrary, tending to show that the vicious result was due wholly to the inadequacy of the appliance made use of at the time the fracture was reduced and kept in use thereafter.

The court admitted evidence showing what would be the cost of an operation which would minimize the suffering due to plaintiff's condition at the time of the trial. Defendant objected to it at the time, and subsequently moved the court to strike it from the record. The court overruled the objection and denied the motion. There was no error. The general rule is that one who has suffered an injury through the fault of another must use ordinary care and diligence to minimize the injurious consequences. (*Allen* v. *Bear Creek C. Co.,* 43 Mont. 269, 115 Pac. 673; *Tiggerman* v. *City of Butte,* 44

Mont. 138, 119 Pac. 477.) When the injury is bodily he is not necessarily bound to submit to a major surgical operation, which may or may not result in a betterment of his condition. (*Freeman* v. *Chicago etc. Ry. Co.*, 52 Mont. 1, 154 Pac. 912.) But it is always a subject of inquiry by the jury, under the circumstances disclosed by the evidence in the particular case, whether or not the plaintiff has met the requirement of the rule. By offering the evidence in question, plaintiff signified his intention to submit to the operation, and, assuming that it would bring him relief from future pain and suffering, to relieve the defendant *pro tanto* from the amount of damages for which he would otherwise be liable; or, to make the statement in a different way, assuming it to be his duty to minimize, so far as he might, the damage resulting from his injury, he, in effect, tendered to the defendant a credit of the amount which the operation would cost, upon the amount the jury might award him in the condition in which he was at the time of the trial. This he had a right to do if he chose. By requesting instructions so framed as to inform the jury of the use they should make of the evidence, the defendant would have gained the advantage to which he would have been entitled had he himself introduced the same evidence in connection with other facts and circumstances sufficient to convince the jury that the plaintiff in the exercise of ordinary diligence and care ought to have submitted to the operation. Plaintiff could not, under [10] any view, recover compensation for future pain and suffering and also the amount it would cost to obtain relief from it.

Evidence was admitted showing the course of treatment pursued by Dr. Wallin subsequent to November 30 and up [11] to the time plaintiff left the hospital. It is urged that this was error. Counsel say that whatever blame may attach to defendant for his wrongful acts and omissions during his attendance upon plaintiff, he cannot be held liable for any act or omission of Dr. Wallin after his attendance ceased. Let this be conceded. There was no error, for two reasons: In the first

place, it was competent to inform the jury that the course of treatment approved by defendant was continued without change by Dr. Wallin, in order to rebut the notion that any efficient cause intervened by reason of anything he did upon his own initiative to bring about the condition in which plaintiff found himself when he left the hospital.  In the second place, the [12]  court instructed the jury in terms that, before they could find a verdict for the plaintiff, they must find that the injury suffered by him was by the wrongful acts or omissions of the defendant prior to his leaving for Florida, on November 30. This effectively excluded from the consideration of the jury, as a foundation for a verdict, anything done by Dr. Wallin [13]  after that date.  Whether the instruction was correct or not, the defendant cannot complain of it, because it was as favorable to him as he could ask.

During the trial the court submitted to the jury for inspection, [14]  over defendant's objection, X-ray plates showing the condition of the bone in plaintiff's leg at the time of the trial. It is now argued that this was error because they were not shown to be correct.  There is no merit in the contention.  It cannot be questioned that a photograph is competent evidence to prove a condition which can be shown by a representation of that sort.  (*State* v. *Jones,* 48 Mont. 505, 139 Pac. 441; Wigmore on Evidence, sec. 790.)  It stands upon the same footing as a map, plan or model, and, when shown by a competent witness to be correct (*State* v. *Jones, supra*), furnishes evidence of a high order of accuracy.  (*Beardslee* v. *Columbia Twp.,* 188 Pa. 496, 68 Am. St. Rep. 883, 41 Atl. 617.)  A plate or photograph taken by the X-ray process must be assigned to the same category.  If, for illustration, it appears from the testimony of the person who took the picture that he possesses the knowledge, skill and experience necessary to enable him to take such pictures accurately, and that the one in question is a fair representation of the situation or condition which is the subject of inquiry, it becomes competent to show that condition.  In this case, the witnesses who took the plates were

both practicing physicians. Upon being questioned, they showed that they understood, and were accustomed to the use of, the process in their practice and possessed the required skill and knowledge to enable them to use it with accurate results.

Much criticism is made of the action of the court in refusing to submit requested instructions and in overruling objections to some of those submitted. An examination of the refused instructions and of the charge as a whole requires the conclusion that the defendant has no cause for complaint. The offered instructions, so far as they embody correct statements of the law applicable to the case, were covered substantially by those submitted. In some instances the specific objections made by counsel to particular instructions are other than those made in the lower court. That court was precluded from granting a new trial for error in any of the instructions not specifically pointed out at the time of settlement. So this court cannot consider any error not specifically pointed out to the trial court. (Rev. Codes, sec. 6746.) We think the charge as a whole covered all the issues in the case, and was as fair to the defendant as he could demand.

The foregoing discussion expresses the views of all the members of the court on each point noticed, except that relating to the evidence showing the cost of a surgical operation to relieve the plaintiff. I do not concur in the conclusion stated in this behalf. In my opinion, the purpose of plaintiff in introducing the evidence was to enable him to recover the cost of the operation as special damages, in addition to the amount claimed as general damages. That this is so is indicated by the allegations in the complaint and the instructions framed upon the same theory, requested by plaintiff and submitted to the jury. Certainly, if the purpose of plaintiff had been to mitigate the damages *pro tanto*, there could be no question as to the propriety of the court's ruling. Considering, however, the theory of the case as disclosed by the complaint and upon which it seems apparent the evidence was offered, I think the ruling erroneous. I therefore think that the defendant should

be awarded a new trial unless the plaintiff should be willing to have the judgment modified by subtracting from the amount of the award by the jury the greatest amount any witness fixed as the cost of the operation, and that the cause should be remanded to the district court, with directions that plaintiff be permitted to exercise this option.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.