## Louisville & Nashville Railroad Company v. Briggs.

(Decided November 11, 1919.)

### Appeal from Bourbon Circuit Court.

1. Master and Servant—Negligence—Question for Jury.—In a servant's action for personal injuries, evidence considered and the question of defendant's negligence held for the jury.

2. Damages—Evidence—Extent of Personal Injuries.—In a servant's action for personal injuries, evidence considered and held that a verdict for "the sum of $5,000.00 for physical pain and suffering and $5,000.00 for future disability" was not excessive.

3. Evidence—Demonstrative Evidence.—In a servant's action for personal injuries, a doctor, who qualified as a specialist in X-ray work, testified that he made the plates showing the condition of plaintiff's jaw, that each was an accurate representation of what it purported to represent, and that, while he did not know whether he made the prints or not, the prints were accurate reproductions of the plates. The plates were identified by the doctor and marked by the notary. A photographer testified that he made the prints from those plates, and that they were accurate: Held, that their evidence and the plates and prints themselves were admissible.

4. Appeal and Error—Evidence—Order of Evidence—Discretion of Court—Prejudicial Error.—As to the time when evidence may be heard the trial court is vested with a broad discretion, and the mere fact that a witness is permitted on re-direct examination to give evidence which should have been given on his direct examination will not be regarded as an abuse of discretion entitling

appellant to a reversal, unless it appears that appellant was thereby prejudiced.

5. Appeal and Error—Master and Servant—Measure of Damages —Personal Injuries—Instructions.—The difference between the Kentucky measure of damages for a personal injury and that adopted by the Federal courts is so slight, that a judgment in favor of the plaintiff will not be reversed because the trial court, in a personal injury action arising under the Federal Employers' Liability Act, gave the Kentucky measure of damages instead of that adopted by the Federal courts.

EMMET M. DICKSON and BENJAMIN D. WARFIELD for appellant.

ROBT. B. FRANKLIN and TALBOTT & WHITLEY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Robert L. Briggs sued the Louisville & Nashville Railroad Company to recover damages for personal injuries. The jury awarded him "the sum of $5,000,00 for physical pain and suffering, and $5,000.00 for future disability." Judgment was rendered accordingly and the company appeals.

At its depot in Paris the company maintains two house tracks located on a curve and only a short distance apart, and near the depot platform. Briggs was a member of a crew whose duty it was to load and unload the cars placed on the house tracks.

To this end it was a part of his duty to put down and take up the skid-boards running from the platform to cars on the nearest track, and from cars on that track to cars on the adjoining track, and to close the doors of the cars. While Briggs and the other members of the crew were thus engaged, it was the duty of the foreman not to permit the engines to come on the tracks, or to undertake to remove the cars until he had given the men timely notice, so that they could protect themselves. Just prior to the accident, an engine backed against the cars, but Briggs says that he did not hear or see this movement, and did not know of the presence of the engine on the tracks. After removing the boards from, and closing the doors of, other cars some distance away, Briggs approached a car where Fitzpatrick, a fellow laborer, was engaged in attempting to remove a board which was "sitting cater-cornered," and had become fastened so that

it could not be removed without assistance. Fitzpatrick requested Briggs to help him and while they were engaged in removing the board an engine approached without warning and struck the cars with such violence as to throw the skid-board against Briggs and severely injure him. This occurred from three to five minutes after the first movement of the engine. It is conceded that at the time of the accident the company was engaged, and Briggs was employed, in interstate commerce.

It is first insisted that the court should have sustained the company's motion for a peremptory. In support of this position it is argued that the company was not negligent in failing to warn Briggs of the approach of the engine, if, as a matter of fact, he knew that the engine was on the track, and that he must have known it because the cater-cornered position of the skid-board was notice of the prior movement of the engine. To sustain the contention of the company we would have to hold as a matter of law that the cater-cornered position of the skid-board was due to the prior movement of the engine, and not to the handling of the freight or some other cause, and that Briggs' reasoning powers were so well trained and unerring that a mere sight of the skid-board was sufficient to apprise him that its peculiar position was due to the prior movement of the engine, and that the engine was still on the track and would soon return and couple on to the cars. Manifestly, the company was negligent in failing to warn Briggs of the approach of the engine unless Briggs knew of its approach, and since the evidence shows that no warning was given, and the only circumstance relied on to show that Briggs knew of the approach of the engine is not even persuasive, much less conclusive, it necessarily follows that the question of negligence was for the jury, and that the peremptory asked for by the company was properly refused.

Another contention is that the damages were excessive. At the time of the accident, Briggs was twenty-five years of age and in good health. He was earning $1.35 a day, and had an expectancy of thirty-two years. According to his physicians, one of whom an osteopath, and the other an osteopath and an M. D., plaintiff's face is disfigured and his jaw in such a condition that he cannot open his mouth to any extent. With the exception of one upper and one lower tooth, his teeth do not track.

The result is that he cannot masticate his food, and there is a partial paralysis of the muscles of the right side of his face. The articulation between the skull and the first bone in the neck is not right. Between the third and fourth vertebrae the inflammation was so great that nothing could be done to relieve the condition. The general weakened condition of the spine will be permanent. Because of his inability to masticate his food, the condition of his spine and stomach will grow worse, and he will never be able to do any work in which manual labor is required. On the other hand, the physicians for the company were of the opinion that the injuries were exaggerated by plaintiff, and were not permanent. According to the calculation of counsel for the company, the present worth of Briggs' future earnings, of which he was deprived by the accident, was $5,929.38. It is argued, however, that this sum is far in excess of the real present worth, because it is based on the assumption that Briggs would not have any earning capacity for the rest of his life, and allows nothing for his contributory negligence. But there is an element favorable to Briggs which must not be overlooked. The calculation is based on the assumption that Briggs' wages would have remained at $1.35 per day. Manifestly, in fixing the present worth of one's future wages, the jury is not confined to the wages received by him at the time of the accident, but may take into consideration the probable increase of his earning power. Indeed, the wages of an employee such as Briggs had increased at the time of the trial, and now such an employee is receiving at least twice what Briggs received. Viewing the case in the light of these circumstances, and of the fact that the question of the permanency of plaintiff's injuries was for the jury, and there was little, if any, evidence of contributory negligence, we are unable to say that the sum of $5,000.00, which the jury allowed for the impairment of plaintiff's earning capacity, was excessive. The same is true with respect to the $5,000.00 allowed for pain and suffering. That plaintiff has already suffered severely and will continue to suffer for a long time to come, is amply sustained by the evidence.

It is also urged that the testimony of Dr. Lange and A. R. Johns, with reference to the X-ray plates and prints showing the condition of plaintiff's jaw, should have been excluded because there was no certainty that

the prints made by Johns were from the X-ray plates made by Lange, and the accuracy of the plates was not sufficiently established to make the evidence competent. Dr. Lange qualified as a specialist in X-ray work. He testified in substance that he made the plates, and that each was an accurate representation of what it purported to represent. While he did not know whether he made the prints or not, he stated that the prints were accurate reproductions of the plates. The plates and prints were marked and filed as exhibits with Dr. Lange's deposition, and were afterwards delivered to the clerk of the Bourbon circuit court. At the trial Johns gave his testimony in person. He stated that he got the plates from plaintiff and made the prints from the plates furnished by plaintiff, and that the prints were a correct reproduction of the plates. Since the plates were identified by Dr. Lange and were marked by the notary, and Johns testified that he made the prints from those plates, there can be no doubt that the prints were made from plates made by Dr. Lange, and since the accuracy of both the plates and the prints was testified to by Dr. Lange, and the accuracy of the prints was testified to by Johns, we conclude not only that their evidence was admissible, but that the plates and prints were also admissible.

Complaint is also made of the court's action in permitting plaintiff's counsel, on re-direct examination, to inquire as to the condition of plaintiff's eyes and heart action before and after the accident. In matters of this kind the trial court is vested with a broad discretion, and the mere fact that a witness is permitted to give evidence on re-direct examination which should have been given on direct examination will not be regarded as an abuse of discretion, entitling appellant to a reversal of the judgment, unless it appears that the appellant was thereby prejudiced, and there is no such showing in this case.

Instruction No. 1 is attacked on the sole ground that it assumed that the jury were authorized under the evidence to find that plaintiff had neither warning nor knowledge of the presence of the switch engine on the house track, or of the probability of its coupling to the cars thereon. It is unnecessary to discuss this proposition further than to say that we have already held that there was sufficient evidence of negligence to take the case to the jury.

It is next insisted that the measure of damages was not correct. Instruction No. 3 is as follows:

"If the jury find for the plaintiff they will award him such sum in damages as they may believe from the evidence will fairly and reasonably compensate him for any physical pain or mental anguish which he has endured, if any, or which it is reasonably certain he will hereafter endure, if any, and for any permanent impairment, if any, of his power to earn money, which they may believe from the evidence are the direct and proximate result of his injuries, if any, not exceeding in all, however, the sum of $25,000, the amount claimed in the petition."

By another instruction the jury were told that if they found for plaintiff any damages for the impairment of his future earning power, they should reduce such damages to their present worth, and directed how this should be done. It is insisted that the measure of damages does not accord with the rule announced in the case of Nashville, C. & St. L. R. Co. v. Henry, 158 Ky. 88, 164 S. W. 310. An examination of that case will show that we simply recognized that the proper measure of damages in cases arising under the Federal Employers' Liability Act must be settled according to general principles of law as administered in the Federal courts, and therefore recommended the practice of adopting the measure of damages sanctioned and approved by the U. S. Supreme Court in the case of Vicksburg & Meridian R. Co. v. Putnam, 118 U. S. 545, 30 L. Ed. 257, where it was said that in an action for a personal injury the plaintiff was entitled to recover not only expenses incurred for medical attendance and a reasonable sum for his pain and suffering, "but also a fair recompense for the loss of what he would otherwise have earned in his trade or profession, and has been deprived of the capacity of earning by the wrongful act of the defendant." We did not rule that it was error to give an instruction employing our measure of damages. On the contrary, we recognized that the difference between our measure of damages for a permanent injury and that adopted by the Federal courts is very slight. Certainly, the difference between "reasonable compensation for the permanent impairment of one's power to earn money" and "a fair recompense for the loss of what he would otherwise have earned in his trade or profession, and has been deprived of the capacity of earning by the wrongful act of the de-

fendant" is not sufficient to authorize a reversal of the judgment.

Other errors are relied on, but we do not deem them of sufficient importance to merit discussion.

Judgment affirmed.