### Foster v. Dukes et al.

March 8, 1946.

C. A. Denny for appellant.

T. J. Sparks for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE REES—
Reversing.

Joe Foster sued William Thomas Dukes and the
National Surety Company, surety on Dukes' bond, for
assault and battery. Dukes arrested Foster on Novem-
ber 11, 1944, for being drunk in a public place, and while
taking him to the city jail struck him on the head with a
blackjack. Appellant admits that he was drunk and that
it was the duty of Dukes to arrest him, but he claims
that Dukes used more force than was necessary in
making the arrest. On the trial of the case the jury re-
turned a verdict for one dollar in favor of the plaintiff,
and he has appealed. He seeks a reversal of the judgment
because of certain rulings of the trial court on the ad-
mission of evidence, errors in the instructions, and in-
adequacy of the damages.

Foster was standing on the sidewalk on Main street
in front of a poolroom when he was arrested. Dukes led
him to a nearby alley and started up the alley toward
the jail, which was located in the next city block. Appel-
lant testified that after they entered the alley Dukes
struck him twice with a blackjack when he was offering no

resistance. Dukes testified that Foster protested when he was arrested, and that after they turned into the alley Foster threw both arms around him and he struck Foster twice with a blackjack. When asked why he hit Foster he said: "Because he grabbed me. I certainly would not have hit him if he hadn't resisted. When he grabbed my arm I hit him. I think I hit him twice."

On cross-examination he was asked these questions and made these answers:

"Q. Mr. Foster wasn't hurting you at the time you commenced to strike him there was he? A. Well, I don't know that he was giving me any pain at all; no.

"Q. Did you think you were striking him in self-defense, or anything of that kind? A. Well, if I hadn't been I wouldn't have struck him I guess.

"Q. Did you strike him in self-defense, or strike him to make him turn you loose? A. I might have struck him to make him turn me loose. I had nothing against him."

There were two cuts on appellant's head, and six stitches were required to close the wounds. He testified that he paid $15 for medical treatment, and that he lost time from his work as a coal miner by reason of his injuries and his wages during the lost time would have amounted to $64.

Appellant admitted that he had been drinking on the day he was arrested. On cross-examination he was asked where he got his liquor, and he answered that someone had brought it to him from Owensboro. An objection to the question and answer was overruled, but that line of questioning was not pursued further. The evidence was irrelevant, but was not prejudicial.

One of appellant's witnesses was asked concerning a statement made by a woman who passed along the street at the time the difficulty occurred. The witness did not know her. An objection to the evidence was sustained, and the following avowal was made: "If the witness was permitted to answer he would say she said: 'are you gentlemen going to stand here and see this man beat to death?'" The witness was then asked if the woman went on down the street, and he answered: "Well, she stood there and talked—not exactly to any one." It is argued that the alleged statement was part of

the res gestae and should have been admitted. As pointed out in Sparks Bus Lines, Inc., v. Spears, 276 Ky. 600, 124 S. W. 2d 1031, there seems to be some conflict in our opinions as to whether or not utterances or exclamations by a bystander, not a participant in the transaction, may ever be admitted as a part of the res gestae, but, be that as it may, the statements claimed to have been made in the present case by the unidentified woman were not "spontaneous utterances of thoughts springing out of the happening itself," but rather statements of opinion formed by the speaker in the course of a conversation with other bystanders. She did not see the commencement of the difficulty. The court properly excluded the testimony concerning the alleged statements of the bystander.

The instructions, except for names, are in the same language as the instructions approved by this court in Murphy v. Phelps, 241 Ky. 339, 43 S. W. 2d 1010, and set out in Section 82 of Stanley's Instructions to Juries. In Murphy v. Phelps there was a clear cut issue of self-defense, while in the present case the appellee's own testimony indicates that his primary purpose in striking appellant was to overcome his resistance and retain him in custody. We are not prepared to say that the instructions were prejudicially erroneous, but the facts correspond more nearly to the facts in Romans v. McGinnis, 156 Ky. 205, 160 S. W. 928, than to the facts in the Murphy case, and since the judgment must be reversed on another ground, an instruction similar to the instruction directed to be given in the Romans case should be given if the evidence is substantially the same on another trial. The converse of the instruction also should be given.

The fourth ground relied upon by appellant for reversal of the judgment presents a more serious question. The jury, by its verdict, found that appellee used more force to accomplish the arrest than was necessary under the circumstances. Aside from any physical suffering or mental anguish, the undisputed evidence shows that appellant was caused to expend $15 for medical services and to lose a substantial amount in wages. Section 340, subsection 4, of the Civil Code of Practice provides that a new trial may be granted on the application of the party aggrieved for "excessive or inadequate damages, appearing to have been given, under the influence of

passion or prejudice or in disregard of the evidence or the instructions of the court." This court has rarely disturbed judgments in personal injury cases because of excessiveness or inadequacy of verdicts as a reference to our opinions in cases on the subject will disclose. However, where the amount was so small that it was evident the jury must have overlooked some material element of damage or ignored the instructions of the court, we have not hesitated to grant a new trial.

In Schriewer v. Schworer, 296 Ky. 749, 178 S. W. 2d 598, 599, Charles Schriewer was injured in an automobile accident and died four days later. His personal representative brought an action to recover the amount expended for medical and nursing services, and also to recover damages for the mental and physical pain and suffering of the decedent from the time of his injury to the time of his death. The jury returned a verdict for the plaintiff in the sum of $259.55, the amount actually expended for the medical and nursing services. There was no recovery for pain and suffering, and this court reversed the judgment because the verdict was inadequate. In the course of the opinion, the court said: "The sum found by the jury is the exact sum established by the evidence for the doctor and nursing, and the jury specifically stated in its verdict that the sum found was for doctor and nursing. These facts are conclusive that the jury found nothing for pain and suffering of the decedent, which is contrary to all the evidence as well as the presumption of law that decedent did suffer pain, and also contrary to the instructions and the law of the case. Since the jury found for plaintiff, it is manifest that they found that defendant was negligent and the deceased was not guilty of contributory negligence. Otherwise the plaintiff would not have been entitled to recover on any item sued for and the verdict should have been for the defendant." See Aetna Oil Co. v. Metcalf, 298 Ky. 706, 183 S. W. 2d 637.

In the case before us the evidence was conflicting and the jury might well have returned a verdict for the defendant, but since it found for the plaintiff, the amount of the damages found by it, $1, was clearly inadequate.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.