## Beauchamp v. Davis et al.

December 7, 1948.

Rehearing denied March 15, 1949.

398

Burwell K. Marshall and P. B. Muir, for appellant.

L. R. Curtis for appellee Robert L. Woodard and Louis Seelbach for appellee Hayes Davis.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

On the 30th day of July, 1944, Mrs. Lois Beauchamp fractured the femur (thigh bone) in her right leg approximately halfway between the knee and hip. The injury occurred in Taylorsville, Kentucky. Dr. R. Hayes Davis of Louisville, who in the past had treated Mrs. Beauchamp for other ailments, was consulted by telephone. On his instructions the patient was taken to the Norton Infirmary. According to appellant's testimony, it was recommended by Dr. Davis and agreed to by appellant that since the fracture was of the oblique type, it should be treated by open reduction and the use of screws, pins, or plates. This method involves surgery, and consists of making an incision through the flesh exposing the bone, and pinning the ends of the bone together at the place of the fracture. Ord'narily the patient then is placed in a cast to render the injured leg immob'le. The testimony for appellant further shows that without first gaining the consent of the patient or her husband Dr. Davis engaged appellee, Dr. Robert L. Woodard, an orthopedic surgeon, to perform the necessary operation; and that contrary to the wishes of the patient and her husband Dr. Woodard attempted to reduce the fracture by applying external fixation. The method adopted consisted of placing pins above and below the break and connecting the pins with an external plate. By "screw'n up on the plate," the bones are supposed to slip back into position, there to be held until healed. In cases where external fixation can be used successfully the average fracture will mend in eight weeks. X-ray pictures were taken when the patient was admitted to the hospital. On the 29th day of September, 1944, apparently assuming, but w'thout taking X-rays to determine, that the segments had united in proper alignment, both doctors ordered the patient to be discharged from the hospital. Mr. Beauchamp objected to the discharge and refused to remove his wife until X-ray pictures were made to determine whether union had been accomplished. Accordingly, a picture was made on September 29th, which disclosed that the segments were not united, and that they were held in a pos'tion rendering it impossible for the bone to mend under the treatment applied. The pins and plates then were removed and on October 6, 1944, traction was applied. This method was abandoned in January, 1945, when it was discovered that the seg-

ments of the bones were still out of alignment, rendering it impossible for them to unite and mend. The leg then was placed in a plaster cast. The patient remained in the hospital until March 1, 1945, and in June of that year Dr. Barnett Owen, an eminent orthopedic surgeon, now deceased, was called into the case. To avoid further extension of the injury he amputated the leg near the hip.

Separate suits were filed by Mr. and Mrs. Beauchamp against the doctors jointly, seeking damages resulting from alleged malpractice. The cases were consolidated for trial, and at the close of all the evidence the motion of Dr. Davis for a directed verdict in his favor in each case was sustained. The verdicts were so rendered and judgments pronounced thereon dismissing the petitions.

The Court submitted both cases to the jury as to the negligence of Dr. Woodard, under instructions which hereinafter will be discussed. The jury found Dr. Woodard to have been negligent and rendered a verdict in favor of Mrs. Beauchamp in the sum of $5,000 but failed to make any award to Mr. Beauchamp on the items submitted to it by the Court. The judgment in favor of Mrs. Beauchamp was satisfied by payment and no appeal has been taken from either judgment in her cases. Mr. Beauchamp has appealed from both judgments denying him recovery.

In sustaining Dr. Davis's motions for peremptory instruction the trial judge explained that he could find no evidence that Dr. Davis was responsible for the condition which developed in the treatment of Mrs. Beauchamp. In submitting the case to the jury as against Dr. Woodard the Court set out certain duties owing the patient by the doctor and about which no complaint is made. The Court then instructed the jury if they should believe from the evidence that when and after the defendant discovered the parts of the fractured bone had not united, the defendant failed to observe the duties imposed on him in the previous instruction and that by reason of such failure, if any, she was caused to lose her "limb," they should find for the plaintiff. In instructing the jury as to the measure of damages to be awarded Mr. Beauchamp the Court refused an offered instruction and gave the following: "If you find for the plain-

tiffs you should award Mr. Beauchamp such sum in damages as you may believe from the evidence will fairly compensate him for any increased loss of the society, companionship and services of his wife over and above such loss as he had already sustained and was sustaining as the result of the accident, and the general conditions that followed therefrom, the award, if any, to him not exceed $15,000.00, the amount claimed by him.''

We first will discuss the appeal from the judgment dismissing appellant's petition against Dr. Davis. It is contended by appellant that the evidence introduced and that offered and rejected by the Court was sufficient to entitle appellant to have the case submitted to the jury on the theory that Dr. Davis did not relinquish control of the case upon Mrs. Beauchamp's admission to the hospital, but on the contrary continued in charge thereof and supervised the care of the patient, thus rendering him responsible for any negligence either independent of or concurrent with the alleged negligence of Dr. Woodard.

The evidence offered and rejected was the print of an X-ray, the negative of which disappeared during the trial of the case. The Court erred in rejecting this evidence. Louisville & N. Railroad Co. v. Briggs, 185 Ky. 676, 215 S.W. 529. The print made from the negative of the X-ray is no less authentic than a print made from the negative of any other film. It is an exact reproduction of the picture on paper, or some other material, and often, if not always, is clearer than the negative to the eye of a layman. On the next trial the Court will permit prints from negatives, properly proved, to be exhibited when offered and the competency of such evidence will not depend on proof that it is impossible to produce the negatives.

We think that the positive evidence of Mr. Beauchamp that Dr. Davis did continue in charge of the case and the fact that he was in almost constant attendance on the patient while she was in the hospital was sufficient evidence against him to submit to the jury the issues presented under appellant's contention.

Dr. Davis and Dr. Woodard testified that the former retired from the case and completely turned it over

to the latter when Mrs. Beauchamp was admitted to the hospital. Dr. Davis further testified that he did not consult with Mr. or Mrs. Beauchamp in respect to the orthopedic work. However, Mr. Beauchamp testified that he constantly consulted Dr. Davis about the case; that he complained of the treatment; and finally demanded that Dr. Davis discharge Dr. Woodard and engage another orthopedic surgeon. He testified that Dr. Davis informed him that he could not call in another surgeon as long as Dr. Woodard was on the case and he declined to dismiss Dr. Woodard. Mr. Beauchamp asked Dr. Davis on several occasions to show him X-ray pictures but the Doctor, with one excuse or another, failed to comply with the request. Dr. Davis admitted that he called on the patient while she was in the hospital and several times thereafter but claimed he was treating her for other ailments which she had complained of in the past. However, his testimony in respect to his visitations upon Mrs. Beauchamp before and after she suffered the broken leg refutes this contention. He stated that before the leg was broken he was called upon to treat the patient on an average of approximately once every two and one-half months; whereas, in the seven-month period that she was confined in the hospital, he visited her eighty-eight times, an average of approximately three visits per week. He did not deny that he directed the patient to be removed from the hospital without having caused X-ray pictures to be taken of the condition at that time.

Where two physicians are engaged to treat the same patient concurrently, they may make such division of service as the circumstances may require, and each in serving with the other is rightly held answerable not only for his own negligence but also for any wrongful act or omission of the other which he observed and permitted to continue without objection, or which in the exercise of reasonable diligence under the circumstances he should have observed. 41 Am.Jur. page 225, Section 113. From the evidence in this case the jury could have found that Dr. Davis, in serving with Dr. Woodard, either observed wrongful acts or omissions on the part of the latter and permitted them to continue without objection, or that he failed in the exercise of reasonable diligence under the circumstances, to observe such wrong-

ful acts or omissions, if any occurred. We, therefore, hold the evidence for appellant to have been sufficient to require the submission of the case to the jury on this issue, and the Court erred in sustaining Dr. Davis's motion for a directed verdict in both cases.

We now will consider the alleged errors relied on for reversal of the judgment pronounced on the verdict of the jury in favor of Dr. Woodard. Mr. Beauchamp testified that he had incurred doctor, hospital, and medical bills in excess of $8,200.00 in the treatment of his wife as a result of the injury sustained. He filed an itemized account of these expenses as a part of his evidence, but a copy of this statement does not appear in the record on this appeal. Mr. Beauchamp offered an instruction to the effect that if the jury should find Dr. Woodard to have been negligent in his treatment of Mrs. Beauchamp, it should find for Mr. Beauchamp in such sum as would reasonably and fully compensate him for any expenses to which he was put for doctors, medicines, hospital bills, X-rays, etc., in the treatment of his wife by reason of the injuries complained of, not exceeding the sum of $7,200 which was the amount claimed in the petition, and that it should further find for him in such sum as the jury believed from the evidence would fairly compensate him for being deprived, if such was the fact, of the aid of his wife in the discharge of the household duties of his home, and for the deprivation, if any, of the aid, comfort, and society of his wife, not exceeding in all the sum of $15,000, the amount claimed in the petition. The Court refused to give this instruction, and confined recovery to fair and reasonable compensation for any increased loss of the society, companionship, and services of Mrs. Beauchamp over and above such loss as Mr. Beauchamp already had sustained, and was sustaining, as the result of the accident and the general conditions that followed therefrom. Since the jury found Dr. Woodard to have been negligent, it was incumbent on the jury, under the instruction given, to award Mr. Beauchamp damages, at least for loss of services. Schriewer v. Schworer, 296 Ky. 749, 178 S.W.2d 598; Foster v. Dukes, 301 Ky. 752, 193 S.W.2d 159. It is apparent, therefore, that the jury failed to follow the instructions when, after finding Dr. Woodard negligent, it failed to award appellant damages. For this reason

alone the judgment would have to be reversed. The Court refused to submit the items for special damages, viz., expenses incurred for doctors, hospitals, medicines, X-ray pictures, etc., which the uncontradicted evidence shows to have been incurred by appellant. The refusal of the Court to permit the jury to make an award for such special damages was based on the failure of appellant to show the amount of such expenses incurred by him after the surgeon discovered the bones would not unite under the treatment first applied, and by reason of that fact the jury could only speculate as to the amount of special damages suffered by reason of the negligence, if any, of Dr. Woodard.

Ordinarily the measure of damages in an action against a surgeon for malpractice in setting and treating a broken bone is the damage accruing to the plaintiff in excess of that which would have accrued naturally from the breaking of the bone, if the patient had been treated with the degree of care and skill which is exercised generally by physicians and surgeons of ordinary care and skill located in the same or similar communities. Thompson's Commentaries on the Law of Negligence, Vol. VI, page 310, Section 7274; Dorris v. Warford, 124 Ky. 768, 100 S.W. 312, 30 Ky.Law Rep. 963, 9 L.R.A.,-N.S., 1090, 14 Ann.Cas. 602. But that rule, when applied to special damages, presupposes that the services for which the extraordinary expenses have been incurred rendered the same benefit to the patient that would have been rendered originally and more timely had the requisite degree of care and skill been employed in the first instance. But where, as here, the negligence, if any, not only caused the plaintiff to incur extraordinary expenses but in addition thereto destroyed the possibility of any benefit which could have been anticipated under skillful treatment in the first instance, the plaintiff is entitled to recover all expenses incurred by him in the entire course of treatment of the patient, because the destruction of the beneficial result of skillful treatment is a damage directly attributable to the negligence complained of. That being true, under the facts of this case it was unnecessary for the plaintiff to prove what part of the expenses was incurred for doctors, nurses, medicines, hospitals and X-ray pictures before and after the occurrence of the alleged negligence and the Court erred in re-

fusing to submit the items of special damage complained of to the jury.

On the next trial the cause against Dr. Davis will be submitted on the whole case, but because the jury on the first trial has decided the question of Dr. Woodard's negligence, under the rule of res adjudicata, the Court will direct a verdict for appellant against him. Blue Valley Creamery Co. v. Cronimus, 270 Ky. 496, 110 S.W.2d 286; Vaughn's Adm'r v. Louisville & N. R. Co., 297 Ky. 309, 179 S.W.2d 441, 152 A.L.R. 1060, with instructions that he be awarded damages in accordance with the principles herein set out.

The judgments are reversed.