Jack G. CRUMP, Plaintiff-Respondent,

v.

D. K. PIPER and Gregory L. Pucci, Defendants-Appellants.

No. 52788.

Supreme Court of Missouri, Division No. 1.

April 8, 1968.

John J. Ziegelmeyer, Kansas City, Kan., John G. Killiger, Kansas City, for respondent.

Richard P. Sprinkle, Kansas City, for appellants; Sprinkle, Carter, Sprinkle, Larson & Hanna, Kansas City, of counsel.

HENLEY, Presiding Judge.

This is an action against an orthopedic surgeon and a neurosurgeon for $250,000 damages for malpractice in the joint performance of surgery on plaintiff on February 7 and May 27, 1964. Verdict and judgment were for defendants. The court granted plaintiff a new trial on the ground that the verdict was against the weight of the evidence. Defendants appeal from that order. We affirm.

The acts of negligence alleged in plaintiff's petition are, in substance: (1) that on February 7, 1964, defendants performed an operation on his back, a laminectomy and a fusion of vertebrae; that they negligently left a foreign object in his body, a cottonoid sponge known as a "peanut," so called because of its size and shape; (2) that on May 27, 1964, defendants performed an operation on his back to remove the sponge; that during this operation defendants negligently permitted fluid to escape from his spinal column requiring further surgical treatment by defendants. Plaintiff further alleged that his injuries and damage were the result of negligence during either the first or the second operation. Defendants' answers were separate general denials. The case was submitted to the jury solely on the issue of negligence in leaving the sponge in plaintiff's back.

Defendants advance two points in their joint brief. The first is that the court erred in overruling their separate motions for directed verdict at the close of plaintiff's case and at the close of all the evidence, because plaintiff did not make a submissible case against both defendants. The second is that plaintiff failed to make a submissible case against Dr. Pucci, because there was no evidence: (1) that he was in charge or control of that part of the operation during which "peanut" sponges were used and one left in plaintiff's back; or, (2) that he was negligent; therefore, the court erred in overruling his motions for directed verdict at the close of plaintiff's case and at close of all the evidence.

We summarize that part of the evidence necessary to our consideration and determination of the points briefed by the parties. Dr. Gregory L. Pucci is a neurosurgeon whose specialty is generally described as the surgical treatment of diseases of the nervous system and, as in this case, the surgical excision of a disk exerting pressure on a vertebral nerve root in the lumbar region. Dr. D. K. Piper is an orthopedic surgeon whose specialty is generally described as the treatment of conditions affecting the musculoskeletal system and, as in this case, the surgical treatment of vertebrae by the fusing or joining of one vertebra to another to produce rigidity of the spinal column in the lumbar region.

In February, 1964, plaintiff consulted Dr. Pucci complaining of persistent severe low back pain extending into his lower extremities. He had a history of having had a laminectomy [1] at the L4–L5 interspace by another doctor in 1957, partial recovery, and a recurrence of pain resulting in another laminectomy at the same point by the same doctor in 1959, and again a partial recovery, but a recurrence of the same symptoms in early 1964. In discussing his condition with Dr. Pucci, plaintiff suggested that if another operation was necessary he thought a fusion should be performed. Dr. Pucci suggested that Dr. Piper be called in for consultation in connection with a possible fusion and that a myleographic study be made. Plaintiff was admitted to St. Joseph Hospital, Kansas City, Missouri, on February 5, for a diagnostic myleogram; it was performed the next day and disclosed a very large filling defect, a marked narrowing at the L4–L5 interspace, and mechanical instability in the L4–L5 and L5–S1 area. Dr. Piper was consulted and the two doctors agreed that another laminectomy and a stabilization of this area was required by a fusion of L4 and L5 to correct plaintiff's condition. Plaintiff was so advised, he agreed to the surgery, and the operation was performed the next morning, February 7.

Briefly, the procedure followed in this operation was: Dr. Pucci opened plaintiff's back with a midline incision, making the incision large enough, of course, to accommodate the latter part of the procedure, the fusion or bone graft; exploring inside, Dr. Pucci found the L4 nerve root and subjacent to it the offending disk fragment; he removed the fragment and Dr. Piper took over for a fusion of L4 and L5. Dr. Piper spread these vertebral bodies apart as much as possible and while so spread he created a mortise in each body with an instrument. He obtained a piece of bone from another part of plaintiff's body to use as a dowel. This dowel was then driven and countersunk into the mortises in these vertebrae to stabilize the spine at this point. Finishing this procedure, he closed the incision or opening with stitches, etc., and plaintiff was sent to the recovery room. Dr. Piper was Dr. Pucci's assistant during that part of the operation performed by the latter, and vice versa. Dr. Pucci testified that he " * * * helped Dr. Piper do the fusion part * * *," but that he was not in the operating room when the wound was closed; that he left to attend to other business. "Peanut" type sponges were not used during that part of the operation performed by Dr. Pucci; they were used during that part of the operation performed by Dr. Piper. One of these sponges was left in plaintiff's body necessitating further surgery for its removal. The sponge was discovered by Dr. Piper in plaintiff's spinal canal near the operation site approximately four months later during routine X rays. It was removed by these two doctors May 27, 1964.

■ In the first part of their argument in support of their contention that plaintiff failed to make a submissible case against both defendants, they discuss at some length whether, relative to the February operation, it was general negligence or specific negligence that plaintiff was required to plead, prove and submit on. In this connection they develop a dissertation on the

1. The removal of all or part of the lamina or disk between two vertebras.

several aspects of the res ipsa loquitur doctrine and whether that doctrine is applicable to malpractice actions. They conclude that plaintiff pleaded (and therefore should have proved) general negligence whereas, they say, he probably should have pleaded specific negligence. They more or less concede that proof that the sponge was left in plaintiff's back " * * * makes a prima facie showing of negligence * *." We are of the opinion plaintiff pleaded and made a submissible case of specific negligence. Hasemeier v. Smith, Mo., 361 S.W. 2d 697, 700 and cases there cited.

■ We pass to the core of their point. It is that plaintiff failed to make a submissible case of negligence in leaving the sponge in his body, because he failed to show by expert testimony that the procedure followed constituted a failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of defendants' profession in good standing practicing in similar localities. In the great majority of malpractice actions a submissible case may be made only by expert medical testimony, for otherwise a jury may not know whether a doctor's acts did or did not conform to the required standards of his profession. But this case falls within the exception to that rule; here " * * * the evidence has shown such an occurrence [leaving the sponge in plaintiff's back] * * * as the lay juror can determine would not likely happen in the exercise of ordinary care and skill." Rauschelbach v. Benincasa, Mo., 372 S.W.2d 120, l.c. 124[5]. See also: Hart v. Steele, Mo., 416 S.W.2d 927, 932[8, 9]; Hasemeier v. Smith, supra; Williams v. Chamberlain, Mo., 316 S.W.2d 505, 511. Expert testimony was not essential to plaintiff's case on the issue of negligence submitted to the jury.

Defendants contend in their second point that the two doctors were independent contractors, each engaged for a specific part of the operation; that each is responsible for his own negligence in that part of the operation performed by him and no more; that since Dr. Pucci was not in charge of the fusion part of the operation and did not use "peanut" type sponges in that part of the operation he did perform, any negligence in leaving the sponge in plaintiff's back may not be charged to him; therefore, plaintiff failed to make a submissible case against Dr. Pucci.

We are cited no authority, in Missouri or foreign jurisdictions, clearly deciding this precise point. Our research has not produced any. The authorities cited by the parties are listed.[2] Telanus v. Simpson, 321 Mo. 724, 12 S.W.2d 920, cited by defendants, involved the negligence of doctors who were partners in the practice of medicine, and is clearly not applicable to the facts in this case. Baird v. National Health Foundation, et al., 235 Mo.App. 594, 144 S.W.2d 850, cited by plaintiff, approaches the precise point more closely. It involved three doctors who, although not partners, were employed by the named defendant to render medical services to plaintiff, one of that defendant's patrons; the doctors were associated in the same office, the office of their joint employer, and each had knowledge of what the other had done and was doing. Each was charged with negligence in their separate diagnoses of plaintiff's illness. The court rejected their contention that because each exercised his independent judgment, one was not liable for errors of the others, holding that in treating

2. Defendants cite Telaneus v. Simpson, 321 Mo. 724, 12 S.W.2d 920, 926; Stokes v. Long, 52 Mont. 470, 159 P. 28; Morey v. Thybo, 7 Cir., 199 F. 760; Thompson v. Lillehei, (D.C.Minn.), 164 F.Supp. 716; Beauchamp v. Davis, 309 Ky. 397, 217 S.W.2d 822; Annotation, 85 A.L.R. 2d 905, sec. 10 [a]. Plaintiff cites Baird v. National Health Foundation, 235 Mo. App. 594, 144 S.W.2d 850, 855; Sprinkle v. Lemley, 243 Or. 521, 414 P.2d 797; Conrad v. Lakewood General Hospital, 67 Wash.2d 934, 410 P.2d 785, 10 A.L.R. 3d 1; Annotations, 85 A.L.R.2d 904, sec. 9; 41 Am.Jur., Physicians and Surgeons, p. 225, sec. 113.

plaintiff they were acting jointly in a common enterprise for a common employer, the Foundation.

■ The general rule with respect to the liability of physicians independently employed or acting and those jointly employed or acting is stated in the summary of Annotation, 85 A.L.R.2d 889, 893, sec. 2, thus: "Physicians independently employed or acting independently in the case are not vicariously liable, unless the one observed, or, in the exercise of ordinary care, should have observed, the wrongful act of the other. On the other hand, vicarious liability has been recognized where the physicians are jointly employed or acting jointly in the case, or are in a partnership for the practice of medicine, unless the wrongful act was outside the scope of the firm's business." It is stated in 41 Am. Jur., Physicians and Surgeons, sec. 113, p. 225: "Physicians who are employed together, who diagnose and treat the case together, without withdrawal by or discharge of either, are both responsible if the treatment is negligent, and under such joint employment, one of the physicians cannot relieve himself of responsibility for negligent treatment by simply staying away, without notice to the patient." See also: 70 C.J.S. Physicians and Surgeons § 54 c., p. 977.

We conclude that it reasonably may be inferred from the evidence that defendants were employed jointly, not independently, to treat plaintiff jointly for the relief of his condition, according to their best judgment. They diagnosed his condition together and reached the same conclusion. They both recommended a laminectomy and fusion of vertebrae in one operation. Although each, in serving with the other, performed that part of the surgery for which his talents particularly qualified him, they acted in concert to accomplish a common goal, the correction of the defect in plaintiff's back. The post operative treatment was by both doctors, including the surgery for removal of the sponge performed by Dr. Pucci with Dr. Piper acting as assistant. From beginning to end both doctors looked upon plaintiff as their joint patient for whose well being and comfort each felt and expressed concern and responsibility, and they so treated him.

■■ We hold that under the facts of this case the two defendants were not independent contractors, each responsible only for his own sole negligence occurring during that particular part of the operation performed by him; that Dr. Pucci is vicariously liable for any negligence of Dr. Piper. Nor may Dr. Pucci be relieved of responsibility for negligence simply because he left the operating room to attend to other business before Dr. Piper finished closing the wound. The court did not err in overruling Dr. Pucci's motions for directed verdict. Baird v. National Health Foundation, supra; Sprinkle v. Lemley, supra, Conrad v. Lakewood General Hospital, supra. See also: Beauchamp v. Davis, supra, and Stokes v. Long, supra.

■ The trial court granted plaintiff a new trial on a discretionary ground: that the verdict and judgment were against the weight of the evidence. Its ruling, based on that ground, is not to be disturbed absent manifest abuse of discretion. Frager v. Glick, Mo., 347 S.W.2d 385, 387[1]. We have held that plaintiff made a submissible case against each defendant. The court did not abuse its discretion. Robinson v. Wampler, Mo., 389 S.W.2d 757.

The order granting plaintiff a new trial is affirmed and the cause remanded.

All concur.