528 P.2d 1269

Leila M. BROOKER, surviving spouse of Frederick E. Brooker, Deceased, Appellant,

v.

Willard S. HUNTER and Dora Lee Hunter, his wife; G. T. Hoffman and Anne E. Hoffman, his wife; and Arizona Orthopedists, P.C., a corporation, Appellees.

No. 1 CA–CIV 2128.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 10, 1974.

Rehearing Denied Jan. 16, 1975.

Review Granted March 25, 1975.

Norman Herring, Phoenix, for appellant.

Robbins, Green, O'Grady & Abbuhl, P. A., by Richard W. Abbuhl, Phoenix, for appellees Hunter and Arizona Orthopedists, P. C.

Jack M. Anderson and John S. Schaper, Phoenix, for appellees Hoffman.

Law Offices of Charles M. Brewer, Ltd., by Charles M. Brewer, Phoenix, for appellee Hunter.

## OPINION

JACOBSON, Chief Judge, Division.

This appeal raises the question of the liability of medical specialists for the alleged negligence of other medical specialists treating the same patient in a post-operative care situation.

The deceased, Frederick E. Brooker, had previously suffered several industrially-related injuries to his back. As the result of his last injury, he was seen by appellee, Dr. Willard S. Hunter, a member of appellee, Arizona Orthopedists, P.C., who recommended surgery. Mr. Brooker was admitted to a hospital on March 31, 1970 for surgery scheduled the following morning. On this date, Mr. Brooker was examined by appellee, Dr. George T. Hoffman, a neurosurgeon, who had been called in for

consultation by Dr. Hunter. Dr. Hoffman, after examining Mr. Brooker and reviewing his history, discovered he had, several years prior, suffered a myocardial infarct and was taking anti-coagulant and anti-cholesterol drugs. Because of this situation, Dr. Hoffman cancelled the scheduled surgery.

Dr. Hunter then secured the services of Dr. Woodson C. Young, an internist, to evaluate Mr. Brooker's heart condition. Mr. Brooker remained in the hospital until April 5, 1970, while Dr. Young conducted tests as to the heart problem. These tests showed some abnormalities as the result of the old infarct and that his enzyme count tests were abnormal. Mr. Brooker was to return to the hospital on April 13, 1970 for the scheduled low-back laminectomy. It appears that Dr. Young was of the opinion at this time that Mr. Brooker was a "fair" risk for surgery.

On April 13, 1970, Mr. Brooker reentered the hospital and surgery was performed the following morning by Dr. Hoffman with Dr. Hunter assisting. The anesthesiologist who assisted at the surgery ordered an EKG taken following surgery and another EKG for the morning of April 15, 1970. The EKG taken following surgery showed the same results as that taken by Dr. Young approximately a week before. However, the EKG taken on April 15 showed increasing abnormalities in the heart and revealed arterial fibrillation. Drs. Hoffman, Hunter and Young denied any knowledge of these EKG tracings or reports, although each admit they never requested to see these results.

Following surgery, Mr. Brooker was seen by Drs. Hoffman and Hunter, along with Dr. Young, and each wrote orders concerning Mr. Brooker's post-operative care. He was last seen by any of his doctors on the morning of April 16, 1970 at which time Dr. Hoffman ordered "ambulation," which was confirmed by Dr. Young. This treatment appears to have been ordered because of the appearance of beginning atelectasis and fluid in the lungs on the morning of the 16th. Thereafter, Mr. Brooker was taken from his bed and urged to walk with the aid of hospital personnel.

During the day and evening of April 16th, Mr. Brooker's temperature rose and his pulse rate increased. Between midnight of the 16th and 2 a. m. of the 17th, Mr. Brooker had difficulty in breathing and was in a hypotensive state. He died in the early morning hours of April 17, 1970. Although no autopsy was performed, Dr. Hunter signed a death certificate showing cause of death as coronary thrombosis.

This malpractice action was brought by appellant, Leila M. Brooker, the surviving spouse, against Drs. Young, Hunter and Hoffman, Hunter's corporation and the hospital. As a result of motions for summary judgment filed by all defendants, the trial court granted judgment in favor of Drs. Hunter and Hoffman, but denied judgment as to Dr. Young and the hospital. Mrs. Brooker has appealed these judgments. Dr. Young and the hospital are not parties to this appeal.

The procedural aspects of the granting of the motions for summary judgment must be discussed because of several issues raised by the parties. After depositions were taken of Dr. Hunter, Dr. Hoffman, Dr. Croddy, the anesthesiologist, and Dr. Paul H. Harmon, an orthopedist from California who was listed as plaintiff's witness, the motions for summary judgment were filed. It appeared that Dr. Harmon's deposition was taken on the stipulation that during Dr. Harmon's stay in Arizona he would not be served with a subpoena and that in the event Dr. Harmon was not called as a witness to personally testify at trial, his deposition would not be offered into evidence. At the time of arguments on the motions for summary judgment, the depositions of Drs. Hunter, Hoffman and Young had not been signed nor had they been filed in the Clerk's office, although counsel for the defendants made these available to the trial court and the trial court considered them in ruling on the motions for summary judgment.

On February 17, 1972, the court, by minute entry order, granted the motions of Drs. Hunter and Hoffman for summary judgment and this order was reduced to a formal written judgment and filed on February 22, 1972. Mrs. Brooker then filed a motion for reconsideration and new trial. Plaintiff's counsel also filed an affidavit by Dr. Elmer Yeoman, supporting the allegations of malpractice. The trial court then entered its order on March 27, 1972, granting the motion for reconsideration and new trial stating that it would consider all depositions then taken including the deposition of Dr. Harmon (the California expert) and directed counsel to file a supplemental affidavit by Dr. Yeoman, seeking his opinion as to the specific negligence of Drs. Hunter and Hoffman as to post-operative care.

This order was followed on March 31, 1972 by notice of defense counsel to take the deposition of Dr. Yeoman. On April 7, 1972, plaintiff's counsel was advised that the deposition of Dr. Yeoman would be cancelled and that only Dr. Yeoman's affidavit would be used. These affidavits, filed on April 11, 1972, expressed Dr. Yeoman's opinion that Drs. Hunter and Hoffman were not negligent in the post-operative care of Mr. Brooker. On April 11, 1972, the plaintiff filed an additional affidavit of Dr. Volney C. Morgan from White Memorial Hospital in Los Angeles. Dr. Morgan's affidavit opined that "the post-operative care reflected in the hospital record of April 13 to April 17, 1970 for Frederick Brooker shows that the two admitting doctors [Drs. Hunter and Hoffman] and the internist [Dr. Young] each participated in the post-operative care, wrote orders for the care of the patient and were jointly responsible for the post-operative care of Frederick Brooker which

was sub-standard, not in accordance with good medical practice and was a substantial contributing factor to the cause of the death of the patient on the morning of April 17, 1970."

On May 8, 1972, the court again granted summary judgment in favor of Drs. Hunter and Hoffman, indicating that it did not consider Dr. Morgan's affidavit because it "comes too late and at that is ambiguous." This appeal followed the formalization of judgments in favor of Drs. Hunter and Hoffman, which complied with Rule 54(b), Rules of Civil Procedure, 16 A.R.S.

As indicated, the parties initially raise several procedural issues. The first of these is the contention of appellee Hunter that this court lacks jurisdiction to entertain this appeal. This contention is based on the argument that the formal written judgment entered on February 22, 1972 was final; that the motion for reconsideration and new trial filed by plaintiff was in essence a Rule 60(c), Rules of Civil Procedure motion [1] which did not extend the time for filing the appeal under Rule 73(b), Rules of Civil Procedure; and that the notice of appeal filed herein being more than 60 days from February 22, 1972, was untimely, thus depriving this court of jurisdiction.

We have reviewed the motion filed by appellant's counsel and conclude that it is couched in the classic terms of Rule 59(a), Rules of Civil Procedure, defining the grounds for a new trial. We thus conclude that the motion is not one under Rule 60(c).

We do not need to decide in this appeal whether a motion for new trial will lie from the granting of a motion for summary judgment,[2] for the trial court granted the appellant's motion. This had the effect of voiding the previous judgment and, if

1. Rule 60(c) provides in part:
   "On motion . . . the court may relieve a party . . . from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly-discovered evidence . . . ."

2. *See* Wright v. Leyda, 67 Ariz. 241, 194 P.2d 441 (1948) ; American States Ins. Co. v. State ex rel. Jennings, 268 N.E.2d 307 (Ind.App.1971).

the trial court's order had been reduced to writing, it would have been appealable (assuming compliance with Rule 54(b), Rules of Civil Procedure). A.R.S. § 12–2101. If this order was erroneously entered by the trial court, the doctors, being aggrieved parties, could have appealed. This they did not do. The only subsequent appealable judgment entered by the court was on May 8, 1972 from which this timely appeal was taken. We therefore hold that this court has jurisdiction to consider the appeal in this matter.

■ The next procedural issue raised is by Mrs. Brooker who urges that the trial court improperly considered the depositions of Drs. Hunter, Young and Hoffman in granting the motions for summary judgment, these depositions not being signed or filed in accordance with Rule 30(f) and (g), Rules of Civil Procedure. However, Rule 32(d)(4), Rules of Civil Procedure provides:

"Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, indorsed, transmitted, filed, or otherwise dealt with by the officer under Rules 30 and 31 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained."

There is no indication in the record that appellant ever moved under this Rule to suppress these depositions, and in fact, appellant has relied on these depositions, both in the trial court and in this court, to support her contention that Drs. Hunter and Hoffman were guilty of malpractice. Under these circumstances we hold the trial court properly considered these depositions in ruling on the motions for summary judgment.

■ Mrs. Brooker next contends that the trial court improperly considered the deposition of Dr. Harmon because of the stipulation entered into between the parties restricting its use only in case of trial. However, as we view the stipulation, it was entered into for the protection of Dr. Harmon's appearance rather than restricting its use for purposes other than trial. Moreover, in our opinion, the use of the deposition in the motion for summary judgment can be considered a "trial," which would allow the trial court to take its contents into consideration.

The last procedural question raised is that the appellees were not entitled to summary judgment because their motions were not supported by affidavits. This issue is answered by Rule 56(b), Rules of Civil Procedure, which provides in part:

"A party against whom a claim . . . is asserted . . . may, at any time, move *with or without supporting affidavits* for a summary judgment in his favor . . . ." (Emphasis added.)

■ We hold that merely because a motion for summary judgment is not supported by affidavits, is not, in and of itself, grounds for denying the motion. Cagle v. Home Insurance Co., 14 Ariz.App. 360, 483 P.2d 592 (1971).

This brings us to the basic issue on this appeal, that is, the liability of different doctors treating the same patient where one, but not all, of the doctors treats that patient negligently. We frame the issue thusly, for while appellant urges that there is evidence that Drs. Hunter and Hoffman were independently negligent in the pre-surgery and post-operative care, we find no such evidence in the record. We reach this conclusion even if we consider the affidavit of Dr. Morgan, which the trial court did not consider. In our opinion, Dr. Morgan's affidavit lacks the specificity to establish the independent negligence of Drs. Hunter and Hoffman. Moreover, this affidavit is based upon the presumption of a relationship existing between Drs. Hunter and Hoffman on one hand and Dr. Young on the other, which is a legal conclusion and not one which Dr. Morgan is privileged to draw. We further assume, for the purpose of determining this issue,

that there is sufficient evidence of negligence by Dr. Young and the hospital to go to a jury.

We also take the facts to be, as shown by the evidence, that Dr. Hunter was the diagnosing and treating physician; that Dr. Hunter called in Dr. Hoffman, with the consent of the patient, to actually perform the surgery, with Dr. Hunter assisting; that Dr. Young was consulted, again with the consent of the patient, to advise the operating physicians as to the patient's cardiac condition and evaluate the risk of surgery on that condition; that Drs. Hunter and Hoffman were responsible for the patient's surgery and his post-operative care insofar as it related to that surgery; and that Dr. Young was to follow the post-operative care of the patient insofar as it related to the cardiac condition.

We thus characterize the relationship of these three doctors as being independently employed and acting independently in the specific aspects of the treatment and care of Mr. Brooker. Such a characterization takes into consideration the specialization of the medical profession today and the specific facts of this case. Moreover, this characterization is consistent with the existing law in the area. It is generally held that physicians who are engaged to treat the patient concurrently and who serve together by mutual consent necessarily have the right, in the absence of instructions to the contrary, to make such a division of services as in their honest judgment the circumstances may require. Morey v. Thybo, 199 F. 760 (7th Cir. 1912); Beauchamp v. Davis, 309 Ky. 397, 217 S.W.2d 822 (1948); Stokes v. Long, 52 Mont. 470, 159 P. 28 (1916).

The responsibility of such independent treating physicians has been held to be that one is not liable for the malpractice of the other, in the absence of evidence that he observed the wrongful act or omission, or in the exercise of ordinary care, should have observed it. *See* Annot.: Physicians—Malpractice by Another, 85 A.L.R.2d 889 (1962) and cases cited at pp. 905–907.

Having found no independent negligence of either Dr. Hunter or Dr. Hoffman in treating or caring for Mr. Brooker, we are called upon to determine, in two phases, whether these doctors observed or in the exercise of ordinary care should have observed, the allegedly wrongful conduct of Dr. Young. The first of these relates to the performance of the surgery in the first instance. In our opinion, in this phase of the inquiry, Drs. Hunter and Hoffman, in the absence of evidence of their prior knowledge of any incompetency of Dr. Young, had the absolute right to rely on his opinion that Mr. Brooker was a fair risk for surgery. Moreover, there is no evidence to indicate that Drs. Hunter and Hoffman were privy to or in the exercise of ordinary care should have been privy to test results performed by Dr. Young in evaluating Mr. Brooker's surgical risk from a cardiac standpoint. Regardless of Dr. Young's negligence in this regard, if any, Drs. Hunter and Hoffman's reliance on his opinion does not result in a breach of duty of care on their part.

The second inquiry deals with the alleged negligence of Dr. Young and the hospital in post-operative care. In our opinion, the only negligence apparent from the record centers on the alleged failure of Dr. Young and the hospital to take steps consistent with the prevailing standard of care to correct or care for Mr. Brooker's condition as revealed by the EKG of April 15, 1970 and the symptoms revealed by Mr. Brooker's chart appearing on the afternoon and evening of April 16, 1970. It is uncontradicted that neither Dr. Hunter nor Dr. Hoffman saw the EKG tracings. It is also uncontradicted that the information placed on the hospital charts prior to their visit on the morning of April 16, 1970 did not call for any treatment other than that prescribed by them. Moreover, the alarming symptoms appearing on the afternoon and evening of April 16, 1970, were never seen by Drs. Hunter and Hoffman. We

are then left with the determination of whether Drs. Hunter and Hoffman owed a duty to make an inquiry concerning the EKG tracings which they had knowledge were taken and which would have led Dr. Hoffman, at least, to take preventative measures.

We agree that Drs. Hunter and Hoffman having undertaken the care and treatment of Mr. Brooker were responsible, after performing the operation, to exercise the same skill as required in the operation itself in the subsequent treatment necessary to assure the patient's recovery. Wooten v. Curry, 50 Tenn.App. 549, 362 S.W.2d 820 (1961); 61 Am.Jur.2d Physicians § 130 (1972). However, if the division of labor between physicians is sound, and we believe it is, we find no duty of care which would require a doctor to make inquiries as to non-observable aspects of post-operative care which fall within the specialty assigned to another. This does not mean that a specialist may close his eyes to observable or recorded symptoms indicating his patient is in danger merely because these symptoms fall outside his specialty or are within the realm of care assumed by another. However, there is no evidence that at the time Drs. Hunter and Hoffman last saw their patient that he was outwardly, or from information then available, in an unstable and dangerous condition. We therefore hold that these doctors, being under no duty to make inquiries concerning the patient's cardiac condition which were not observable or part of his record, cannot be liable for failing to make such an inquiry.

For the foregoing reasons, the judgment of the trial court is affirmed.

EUBANK, Acting P. J., and NELSON, J., concur.

Note: Judge LEVI RAY HAIRE having requested that he be relieved from consideration of this matter, Judge GARY K. NELSON was called to sit in his stead and participate in the determination of this matter.