**Julie K. TUDOR, Appellant,**

v.

**Ann BEHREND–UHLS,
M.D., Respondent.**

**No. WD 46316.**

Missouri Court of Appeals,
Western District.

Oct. 6, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Nov. 24, 1992.

Application to Transfer Denied
Jan. 26, 1993.

G. Spencer Miller, Larry K. Marske, Philip R. Holloway, Miller, Dougherty & Modin, Kansas City, for appellant.

Brian J. Niceswanger, McDowell, Rice & Smith, Kansas City, for respondent.

Before TURNAGE, P.J., and
BRECKENRIDGE and HANNA, JJ.

TURNAGE, Presiding Judge.

Julie Tudor brought a medical malpractice action against two physicians, Lee Nigro, M.D., and Ann Behrend–Uhls, M.D., for alleged negligence in the performance of thyroid surgery. The court sustained a motion for summary judgment in favor of Behrend–Uhls. Tudor contends there are genuine issues of fact to be resolved. Reversed and remanded.

■ Behrend–Uhls first contends that this court lacks jurisdiction to review Tu-

dor's appeal on the ground that the notice of appeal was not timely filed. The court entered judgment in favor of Behrend–Uhls on April 27, 1992 and found that there was no just reason for delay. Tudor filed a notice of appeal on May 20, 1992. Under Rule 74.01(b), the judgment in favor of Behrend–Uhls was appealable even though all parties and claims were not disposed of by the judgment. Behrend–Uhls contends that a judgment entered pursuant to Rule 74.01(b) is final when entered and Tudor had 10 days thereafter in which to file a notice of appeal. Behrend–Uhls concludes that the notice of appeal was untimely filed.

Behrend–Uhls advances her argument based on Rules 74.01(b) and 81.04(a) and Rule 54(b) of the Federal Rules of Civil Procedure. She contends that Rule 74.-01(b) is virtually identical to Rule 54(b). Although the rules are similar, Rule 74.-01(b) is, nonetheless, distinguishable from Federal Rule 54(b). Rule 54(b) contains language which has been construed by the federal courts as a means of "certifying" a claim for immediate appeal. *Federal Deposit Ins. Corp. v. Tripati*, 769 F.2d 507 (8th Cir.1985). Rule 54(b) provides, in pertinent part:

When more than one claim for relief is presented in an action, ... the court may direct the entry of a *final judgment* as to one or more but fewer than all of the claims or parties only upon an *express determination that there is no just reason for delay and upon an express direction for the entry of judgment....*

In *Tripati*, the court held that "[w]hen a district court certifies a claim for immediate appeal under Rule 54(b), the time for taking the appeal begins to run on the date of certification." *Id.* at 508. Unlike the Missouri rule, which does not contain any terminology that has been construed by the courts as "certification" language, Rule 54(b) contains a 2–step process for certifying a claim for immediate appeal. The federal rule provides that a court may enter a "final judgment" as to certain issues in an action involving multiple claims or parties, but only (1) *"upon an express determination that there is no just reason*

*for delay"* and (2) *"upon an express direction for the entry of judgment."* Fed. R.Civ.P. Rule 54(b).

Rule 74.01(b) is a general rule regarding judgments which allows the trial court to dispose of certain parties or issues in an action involving multiple claims or parties before a final determination as to all claims or parties has been reached and before a final judgment has been entered. Nowhere in the language of Rule 74.01(b), however, does it mention or discuss "certifying" a claim for "immediate appeal." Nor does the rule indicate that a claimant must file the notice of appeal within 10 days of such judgments.

Rule 74.01(b) provides, in pertinent part:

When more than one claim for relief is presented in an action, ... the court may enter a *judgment* as to one or more but fewer than all of the claims or parties only upon an *express determination that there is no just reason for delay.* ...

The Missouri rule omits the "express direction" language, and instead, states simply that "the court may enter a judgment ... upon an express determination that there is no just reason for delay." Rule 74.01(b) also refers to a "judgment" rather than to a "final" judgment as contained in the federal rule. Further, there is nothing in the 74.01(b) language that indicates any difference between the judgment in this case and the judgments addressed in Rule 75.01, which provides that, "[t]he trial court retains control over judgments during the thirty-day period after entry of judgment...."

Moreover, there is no indication that the judgment referred to in Rule 74.01(b) is different from the judgment in Rule 81.-04(a) which provides that a notice of appeal must be filed not later than ten days after the judgment becomes final. The rules of this state simply refer to a judgment, without distinguishing between a judgment entered pursuant to Rule 74.01(b) and other judgments. Thus, a judgment entered under Rule 74.01(b) is a judgment over which the court retains control for thirty days

and becomes final at the end of that time, unless some action is taken, and a party has ten days after that date in which to file a notice of appeal. In this case, the notice of appeal was filed within ten days after the judgment became final and was therefore timely filed.

■ Tudor contends there are genuine questions of fact which preclude summary judgment. This appeal involves only the case against Behrend–Uhls and whether the trial court properly granted summary judgment in her favor.

From the petition and depositions in this case it is undisputed that on November 14, 1988, during an annual gynecological exam, Julie Tudor requested that her physician, Dr. Ann Behrend–Uhls, look at a lump in her throat which had been discovered approximately one month earlier during a dental examination. Upon discovering a nodule in Tudor's thyroid, Behrend–Uhls, who is an obstetrician and gynecologist, ordered laboratory tests which confirmed the presence of a "cold nodule." Thereupon, Behrend–Uhls contacted Dr. Lee Nigro, a surgeon, for advice on the use of the drug Synthroid in an effort to reduce the size of the nodule. Upon recommendation by Nigro, Behrend–Uhls prescribed the drug to Tudor as treatment for the nodule. After six weeks with no change in the size of the nodule, Behrend–Uhls referred Tudor to Nigro for additional evaluation and treatment.

Nigro recommended surgery to remove the nodule which proved to be thyroid cancer. Thereafter, surgery was scheduled to be performed on February 3, 1989. At this time Tudor requested that Behrend–Uhls perform a bilateral tubal ligation while she was under general anesthesia for the thyroid surgery to be performed by Nigro. During surgery, Behrend–Uhls assisted Nigro in the performance of the thyroid surgery by holding retractors and cutting sutures. After the thyroid procedure was completed, Behrend–Uhls performed a tubal ligation on Tudor. Behrend–Uhls collected a fee for her services as Nigro's assistant during the thyroid surgery as well as for her services in performing the tubal ligation.

Following the surgery and upon awakening in the recovery room, Tudor experienced severe difficulty in breathing and swallowing and was subsequently diagnosed as suffering from bilateral vocal cord paralysis and hypocalcemia. As a result of her permanent and irreversible injuries, Tudor has had to undergo subsequent reconstructive surgeries, including the implantation of a tracheostomy tube in her throat. After sustaining such injuries, Tudor filed a petition for damages against Nigro for failure to identify, retract and protect the recurrent laryngeal nerves which allegedly led to the vocal cord paralysis. The petition was later amended to include negligence claims against Behrend–Uhls as well. In her petition, Tudor alleged that Nigro and Behrend–Uhls acted at all times as agents and in concert with one another regarding the care and treatment rendered to Tudor for her thyroid condition. On appeal Tudor contends that the trial court erred in granting summary judgment in favor of Behrend–Uhls because genuine issues of material fact exist regarding: (1) whether Nigro and Behrend–Uhls were acting in concert as joint tortfeasors when the injury occurred; (2) whether Behrend–Uhls negligently referred Tudor to Nigro; (3) whether Behrend–Uhls was negligent in assisting Nigro in the performance of the thyroid surgery.

In reviewing a grant of summary judgment, the record must be viewed in a light most favorable to the party opposing the motion. *Y.G. v. Jewish Hosp. of St. Louis*, 795 S.W.2d 488, 494[9] (Mo.App.1990). The grant of a summary judgment is inappropriate unless the record shows that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 74.04(c). Thus, a summary judgment is appropriate only in cases where the record reflects no theory that would permit recovery. *Id.* at 495.

In *Crump v. Piper*, 425 S.W.2d 924, 928[3] (Mo.1968), the court held that vicarious liability has been recognized when physicians act jointly in a case or when they

"acted in concert to accomplish a common goal." The pleadings, affidavits and depositions in the case at bar indicate that there is a question of fact as to whether Behrend–Uhls and Nigro were acting as independent contractors or were acting jointly in performing the surgery. This presents a genuine issue of material fact of whether or not Tudor and Nigro were acting in concert to accomplish a common goal while engaged in the thyroid surgery so that each would be liable for the negligence of the other. Under these circumstances, and viewed in a light most favorable to the nonmoving party, this court finds that genuine issues of material fact exist which makes the grant of summary judgment inappropriate. Therefore, it was error for the trial court to grant summary judgment. The judgment is reversed and the cause remanded for further proceedings.

All concur.